GATES, Appellant, vs. YOUNG and others, Respondents.

*November 5 — November 25, 1890.*

*Logs and lumber: Action on bond of inspector: Mistake in scaling logs: Evidence: Nonsuit.*

In an action on the official bond of a lumber inspector the plaintiff's evidence tended to show that in the spring of 1886 he had, on the banks of a certain river, pine logs measuring at least 10,845,940 feet and which the defendant inspector then scaled as containing that quantity; that previous to 1890 all of said logs were floated down to a certain boom; that the quantity floated down to said boom in 1886 was there scaled by said inspector at only 3,419,750 feet, and the quantity subsequently floated down, together with all the logs found stranded along the river, were scaled by him at only 4,498,400 feet; and that not more than ten per cent. of the logs would be lost in floating them down. *Held*, that in the absence of explanatory evidence on the part of the defendants, the plaintiff was entitled to have the question submitted to the jury whether the inspector had not been guilty of negligence in making the scale of the logs at the boom in 1886.

APPEAL from the Circuit Court for *La Crosse* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as part of the opinion:

This action is brought upon the official bond of *Elliott C. Young* as lumber inspector of the second lumber district of Wisconsin. The defendants *Withee, Gile,* and *Anderson* are sureties on said bond. The bond is in the form prescribed by the statute, in the penal sum of $5,000. The condition of the bond reads as follows: " The conditions of this obligation are such that whereas the said *Elliott C. Young* was on the 6th day of April, 1885, duly appointed by the governor of the state of Wisconsin as lumber inspector of district No. 2, for the term of two years from the first Monday in April, 1885, and until his successor is appointed and qualified. Now, if the said *Elliott C. Young* shall faithfully perform his duties as lumber inspector of said district No. 2, and deliver to his successor in office all bills, papers, journals, books, and other effects appertaining to his office, then this obligation to be void; otherwise to remain in full force and virtue."

There is no question about the execution or the validity of the bond given in this case. It is admitted to be in the form prescribed by sec. 1732, R. S., and it is also admitted that the action was properly commenced under secs. 985, 986, R. S. Nor is there any contention that the facts stated in the complaint do not state a good cause of action against the defendants. The material parts of the complaint are the following: On and before March 30, 1886, the plaintiff was the owner of 10,845,940 feet of pine saw-logs lying upon the banks of Hay creek and the east fork of the Black river. " That all of the logs hereinbefore described were by said plaintiff put into the East fork of the Black river, hereinbefore described, which flows into the Black river, and which Black river flows to or near the city of La Crosse aforesaid; and that thereafter between the 30th day of

March, A. D. 1886, and the 1st day of April, A. D. 1887, while said plaintiff was still the owner of said logs, and while they were all within the territorial limits of said lumber district No. 2, said plaintiff requested said defendant *Elliott C. Young*, as lumber inspector aforesaid, to make a true and correct scalement or measurement of such portions of the logs hereinbefore described as came into the boom on said Black river at or near said city of La Crosse within the period last named, and to make and deliver to said plaintiff a bill or bills thereof according to the statutes in such case made and provided; and that within the time specified, to wit, between the 30th day of March, A. D. 1886, and the 1st day of April, A. D. 1887, said defendant *Elliott C. Young*, as lumber inspector aforesaid, did, at plaintiff's request, make a scalement or measurement of such logs so requested by said plaintiff to be measured, which came into the boom hereinbefore described within the period last named. That said defendant *Elliott C. Young*, as lumber inspector aforesaid, negligently and falsely scaled and measured the same as containing only 3,419,750 feet, and was paid therefor his lawful fees, and made and delivered to said plaintiff bills showing the scalement or measurement thereof to be only 3,419,750 feet, and that in fact and truth the true, correct, and actual scalement or measurement of plaintiff's logs, which came into said boom within the period last named, and which were within said period scaled or measured by said defendant *Elliott C. Young*, as lumber inspector aforesaid, should have been, and was, 6,446,940 feet. That said plaintiff had theretofore contracted to sell, and was obliged to and did sell, the logs last hereinbefore described which came into said boom within the period last named, according to the scalement or measurement thereof made and scale bills given by said defendant *Elliott C. Young* as lumber inspector aforesaid, between the 30th of March, A. D. 1886, and the 1st day of

April, A. D. 1887, and was obliged to and did receive pay therefor on the basis of such last-described scalement or measurement, to wit, for 3,419,750 feet only, and that, by reason of the premises and such negligent and false scalement or measurement by said defendant *Elliott C. Young*, as lumber inspector aforesaid, and such false scale bills of said defendant *Elliott C. Young*, as lumber inspector, said plaintiff has been damaged in the sum of $5,000. That the acts of said defendant *Elliott C. Young*, as lumber inspector aforesaid, and such negligent and false scalement or measurement, and such false scale bills, are and constitute a breach of the conditions of the bond hereinbefore set out at length. And that, by reason of the premises and according to the statutes in such case made and provided, an action has accrued to said plaintiff upon said bond, and there is now justly due thereon from said defendants to said plaintiff the sum of $5,000, for which sum, besides his costs and disbursements incurred in and about said action, said plaintiff demands judgment against said defendants."

The answer of the defendants admits that *Young* was lumber inspector and as such gave the bond set out in the complaint, duly executed by all the defendants; that the action was commenced by the plaintiff in the manner required by the statute; and they also admit that the plaintiff, between the 1st day of December, 1885, and the 1st day of May, 1886, was the owner of a large quantity of logs within district No. 2, and situate on the banks of the east fork of Black river, and deny all the other material allegations of the complaint, except that it became the duty of *Young* to scale said logs at the boom near La Crosse when they came down the river. And they allege that he scaled them correctly; that all of the plaintiff's logs which came to said boom in 1886, near La Crosse, were correctly scaled by the said *Young;* and that the quantity which came there was only 3,419,750 feet, and not 6,446,940 feet, as claimed by the plaintiff.

The case was tried by the court and a jury, and after the plaintiff had introduced his evidence and rested his case the court, on motion of the defendant, nonsuited the plaintiff, and judgment was rendered against him for the costs of the action, and the plaintiff appeals to this court.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and the cause was argued orally by *W. K. Gibson* and *J. G. Flanders.* As to the competency of the evidence on the part of the plaintiff to establish the liability of the defendants, they cited *Spensley v. Lancashire Ins. Co.* 54 Wis. 433; *Goodale v. Portage L. B. Co.* 55 Mich. 417; *Busch v. Nester,* 70 id. 533; *Walker v. Duncan,* 68 Wis. 624; *Gardner v. Wilber,* 75 id. 601; *Stringham v. Cook,* id. 589; *Gaines v. Betts,* 2 Doug. (Mich.), 98; *Berry v. Lowe,* 10 Mich. 15; *Conely v. McDonald,* 40 id. 159. The defendants are liable as well for the mistakes of the inspector in the performance of his official duties as for his negligence and fraud. Mechem, Officers, secs. 664, 670; *Amy v. Supervisors,* 11 Wall. 136; *Raynsford v. Phelps,* 43 Mich. 345; *Marbury v. Madison,* 1 Cranch, 137; *Druecker v. Salomon,* 21 Wis. 629; *Governor v. Dodd,* 81 Ill. 162.

For the respondents there was a brief by *Losey & Woodward,* and oral argument by *G. M. Woodward*

TAYLOR, J. Upon the hearing of the appeal in this court, the learned counsel for the appellant claims it was error to nonsuit the plaintiff, and insists that there was sufficient evidence to go to the jury upon the question as to the accuracy of the scale of the logs made by the inspector at La Crosse in 1886. After a careful consideration of the evidence, we think there was evidence which should have been submitted to the jury upon the question of the justice and fairness of the scale of logs made at the boom at La Crosse by the defendant *Young* in 1886. The plaintiff certainly makes out a case for the jury upon the question whether he had upon the banks of the east fork and on Hay

creek, in the spring of 1886, 10,845,940 feet of logs on which the sterling mark was placed. It is true, *Young* states upon his examination by the plaintiff, that, notwithstanding he gave that amount as his scale and measurement of them in 1886, he was, at the time of his examination, of the opinion that it was a mistake, and there was a less amount of them. Against this opinion of *Young,* the plaintiff has the testimony of Currier and of most of the men who put in the logs, who by their evidence tend to support Currier in the claim that there were more than 11,000,000 feet of them; and the scale bills of them given by the defendant *Young* to the plaintiff in 1886, are, by the statute, made *prima facie* evidence of their correctness, except in favor of the inspector *Young.* See sec. 1735, R. S. 1878. It cannot be said, therefore, that there was not sufficient evidence to go to the jury upon the question of the quantity of the logs on the bank of the river in the spring of 1886, and that such quantity was at least 10,845,940 feet; and the only other material question in the case for the jury to pass upon was whether, in the year 1886, and before the spring of 1887, a much larger quantity than the defendant reported by his scale passed through the boom at La Crosse, which it was his duty to carefully scale and measure at that place.

Upon this question it must be admitted there is much less evidence than on the question as to the quantity which was put on the banks of the river during the preceding season. As insisted by the learned counsel for the defendant, there is no direct evidence that the logs on the banks of Hay creek and on the east fork were put in the river and floated down stream, nor is there any evidence of the stage of water that season,— whether it was a suitable season for floating and running logs in said streams and in the river,— which might aid a jury or court in determining the question as to the quantity which would be likely to come down that year. Still we think there was some evidence

introduced upon which a jury might have concluded that more than 3,419,750 feet came down that year. There was the evidence of the defendant *Young* that ninety per cent. at least of the quantity of logs put in the river would arrive at their destination at La Crosse; and in addition to that the plaintiff put in evidence the scale bills made by the defendant *Young* that only 3,222,730 feet came down in 1887; that 785,310 feet came down in 1888; and that only 389,960 feet of these logs could be found at the places where these logs were banked or stranded in or in the vicinity of the river. Adding together the amounts coming down in 1887, 1888, and those found stranded, we get 4,498,400 feet of these logs accounted for after 1886.[1] Now, taking the estimate made by *Young* that about ten per cent. would be lost by sinking or otherwise, there would be unaccounted for the difference between ninety per cent. of the 10,845,940, which is 9,761,346, and 4,498,400, equaling 5,262,946 feet. And it is claimed by the learned counsel for the appellant that the jury would be justified in finding that that 5,262,946 feet came down to La Crosse in 1886, instead of the 3,419,750, as reported and scaled by the defendant *Young*; and that so great a difference in quantity is inconsistent with the exercise of reasonable care on the part of the inspector in discharging his duty. He also argues that, if it be insisted that the mistake in the measurement was as likely to be in the measurements of 1887 or 1888 as in the measurement of 1886, his reply is that he is at liberty to avail himself of the presumption of the statute that the measurements of 1887 and 1888 are correct until there is some evidence showing that there has been a mistake in them. Whether this argument should have weight with the court or jury we are not called upon to determine, as

[1] An apparent discrepancy in these figures was not discovered until after the death of Mr. Justice TAYLOR, and since it is not material, as affecting the decision, no correction has been attempted.— REP.

we think that having given considerable evidence tending to establish the fact that at least 10,845,940 feet of logs were placed upon or in the east fork of Black river and upon Hay creek in the logging season of 1886, and having also given evidence tending to show that all the logs so placed by the plaintiff previous to 1890 were floated into Black river, and down to the boom at La Crosse, and that they were there scaled by the defendant *Young* a second time, and that he then scaled them, including what were found stranded on the banks of the river, at only 7,816,750 feet, and there being no evidence tending to show that more than ten per cent. of the logs placed in the waters of the river, would be lost in running them to La Crosse, deducting this ten per cent. for losses in running said logs, there is still unaccounted for by the second scaling, 1,944,596 feet.

We think the plaintiff was entitled, in the absence of any explanatory evidence on the part of the defendant, to have it submitted to the jury whether the defendant had not been guilty of negligence in making the second scale, and especially as to that part of the logs scaled in 1886; and, although there may not have been any more evidence tending to show a mistake in the scale of 1886 at La Crosse than in the scales made in 1887 and 1888, still the question whether there had been a mistake made in 1886 was for the jury; and although they may have found that there was a mistake in all the scales at La Crosse, and not in the 1886 scale alone, still, if they found a mistake in all the scales, they could have apportioned the damages which the plaintiff had suffered by reason of the mistake in the scale of 1886, if under the pleadings he must be limited,— as we think he must,— to the damages he sustained by a mistake in the scale of 1886, and in no other. The charge of injurious mistake is so particularly made in the. complaint that we think he must be confined to a mistake in the scale of 1886 alone, as, under the pleadings, the defendant is not

called upon to defend the correctness of any of his scales except that; and, if the plaintiff wishes to insist that other scales or all the scales made at La Crosse were incorrect and injurious to him, he should amend his complaint in that respect; and so if he wishes to insist that the defendant *Young* unlawfully reduced the scale of the logs put in by the plaintiff in the logging season of 1885-86.

We do not wish to be understood as intimating that in our opinion the testimony in the case tends strongly to establish any injurious mistake made by the defendant *Young* in scaling the logs at La Crosse. We simply hold that there was enough evidence tending to show such mistake to make it the duty of the trial judge to submit the question to the jury for their determination.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.