DAVID B. FLINT & another *vs.* NEHEMIAH GIBSON.

A merchant and a ship-builder agreed that the latter should alter, fit for sea, and deliver, for a certain price, and according to specifications which left much to judgment and estimate, a gunboat as a merchant vessel, "under the inspection and subject to the approval" of J. S., a person experienced in ship-building, "acting in this instance on behalf of" the merchant, "any question arising under this agreement, wherein the parties hereto cannot agree, to be referred for decision to J. S., whose decision shall be final." *Held,* that, in the absence of fraud on the part of the builder, the approval and acceptance of the vessel by J. S., in good faith and without such mistake in any particular as prevented an exercise of his judgment on it, was binding upon the merchant.

CONTRACT. The declaration alleged that the plaintiffs, who were partners under the name of Flint & Hall, entered into a written agreement with the defendant, on March 4, 1868, at Boston, where both parties were merchants ; and set forth the agreement, of which the material stipulations were as follows :

" Gibson shall deliver on or before April 24, 1868, to Flint & Hall, a certain vessel formerly the United States double-ender gunboat Osceola, fitted for sea for a voyage hence *viâ* St. Johns, New Brunswick, to Montevideo, under the inspection and subject to the approval of George Frazar, agent of the American Lloyd's and acting in this instance on behalf of Flint & Hall, and to be so fitted in conformity with memorandum hereto appended signed by Gibson and Flint & Hall, which memorandum is hereby made part of this agreement and is to be the guide of Frazar in the inspection of the vessel.

" In consideration of the faithful performance of the preceding clause of this agreement, Flint & Hall hereby agree to pay to Gibson the sum of $22,000 on delivery of the vessel ready for sea, as herein detailed.

" It is understood and agreed between the parties hereto, that Flint & Hall are to be allowed a fair abatement for any work herein agreed to be done which may not be required by them, and that they shall pay fair remuneration for any extra work or material beyond what shall be required under a fair construction of this agreement.

" Any question arising under this agreement, wherein the parties hereto cannot agree, to be referred for decision to George Frazar, whose decision shall be final."

The memorandum appended to the agreement provided in general terms for alterations to be made and materials to be furnished by the defendant, and also provided for some alterations and materials specifically; and among its provisions were, th.t the vessel should have " four masts, stepped under direction f Frazar, foremast square-rigged with three sails, and fore and aft lower sails and gaff topsails on the other masts, and bowsprit and jib-booms, requisite sails, spars, blocks and running rigging for this rig; " should " be thoroughly calked," and her " decks be completed to be in proper condition for the voyage; " and that " in the adjustment of matters of detail, and essentials not particularized in this memorandum, Gibson agrees to be governed by the suggestions of Frazar, who will be guided by the spirit of the agreement to which this is to be appended."

The declaration further alleged that the defendant delivered the Osceola to the plaintiffs, but not fitted for sea for the voyage stipulated in the agreement, or for any voyage, but on the contrary unseaworthy in many respects, and particularly in regard to the size and shape of the rudder, and the mode of attaching it to the hull; that, immediately after her delivery to the plaintiffs, the vessel sailed to St. Johns, where the plaintiffs were obliged to incur much expense for repairing and replacing rotten rigging and canvas, and other defective material used in the fitting; that upon loading her with lumber at St. Johns it was discovered that one of the main timbers supporting the deck was broken, and that she leaked badly, and before she could sail from there to Montevideo it was necessary to unload her twice, and calk her and do various other repairs; that on July 25, 1868, upon the voyage to

Montevideo, the rudder dropped off and was lost, in good weather, without other cause than her unseaworthy condition; and that, notwithstanding all efforts of her crew to save her, she was wrecked and totally lost, with her cargo, by reason of the rudder; and the plaintiffs claimed to recover the expenses and losses to which they were thus subjected.

In a second count similar allegations and claims were made with regard to a double-ender gunboat, so called, named the Agawam, which the defendant fitted under a like agreement between him and the plaintiffs, dated March 12, 1868; except that the Agawam was not lost by reason of her unseaworthy condition in respect to her rudder and otherwise, but was repaired and a new rudder substituted by the plaintiffs.

The defendant demurred to the declaration, on the ground, among others, that by the agreements he engaged to deliver the gunboats fitted for sea under the direction and subject to the approval of George Frazar, and it was not alleged that they were not so fitted according to Frazar's requirements and approval, and so no breach of contract was alleged. And the case was thereupon reserved by the chief justice for the determination of the full court.

*O. Stevens*, for the defendant.

*F. E. Parker*, for the plaintiffs, cited *McCarren* v. *McNulty*, 7 Gray, 139; *Grafton* v. *Eastern Counties Railway Co.* 8 Exch. 699; *Rex* v. *Peto*, 1 Younge & Jervis, 37.

COLT, J. The defendant, by two similar contracts, agreed to deliver two vessels to the plaintiffs, fitted for sea for a specified voyage, under the inspection and subject to the approval of Mr. Frazar, the agent of the American Lloyd's, acting in behalf of the plaintiffs; the vessels to be fitted in conformity with the memoranda annexed, and all questions arising under the contracts be referred for final decision to the same person.

It is not denied in the declaration, and it was admitted at the argument, that these vessels were inspected and approved by Frazar, and delivered to the plaintiffs under the contracts. The question raised by the demurrer is, whether the plaintiffs can now maintain an action upon the mere allegation that they were not

seaworthy when delivered, or were not fitted in accordance with the specifications. This depends upon the relation which by the true construction of the contracts Frazar holds to the parties.

On the part of the plaintiffs, it is contended that, under the clauses providing for the inspection and approval, he acted only as agent of the plaintiffs, to see that the work was done according to the specifications, and not as referee agreed upon, whose judgment was to be binding; that, if the work was not in fact done according to the terms of the contracts, they may now show it, and recover, notwithstanding the agent's acceptance, because one of the things to which the defendant was bound, namely, the delivery of the ships fitted to perform the required voyage, has not been done. On the other hand, the defendant contends that, as the approval and acceptance of Frazar was a condition precedent to the right to recover the agreed compensation, so, after his approval and acceptance, the plaintiffs cannot recover without proof of fraud, either on the part of the defendant or the referee. And we think the defendant's position is well taken.

It is evident, without going outside the contracts, that a correct estimate of the amount and character of the work, necessary to be done upon these ships to fit them for the contemplated voyages, could only be made by a man of judgment and experience in such matters. It is to be considered that they were " doubleender gunboats," in their original construction, and had been employed in the United States service; that the contracts required their alteration and refitting for use as sailing vessels with four masts; and that the contract and memorandum in each case plainly indicate that much must be left to judgment and estimate. Under such a state of facts, a person, whose official station indicates that he is fit for the duty, is selected to supervise, inspect and approve the work, and is expressly enjoined to be " guided by the spirit of the agreement." He is, in the opinion of the court, thus made an arbitrator between them, and his approval is binding upon them as an award, however much he may have erred in judgment. The statement that, in this, he is to act in behalf of the plaintiffs, does not take from him the character of an arbitrator, so far as his judgment affects the plaintiffs' rights. The

defendant at least had the right to conclude that, when the ships were inspected and approved in good faith, his part of the contract was performed ; and the fact that Frazar was acting in some sense as the agent of the plaintiffs affords the plaintiffs no ground to avoid his award.

The allegations of the declaration therefore fail to show a good cause of action. The decision of the arbitrator is binding, unless impeached for fraud or shown to have been made under a mistake by which he was misled and so far failed to apprehend the case submitted to him that he did not in fact exercise his judgment upon it. This is not charged by the plaintiffs. *Palmer* v. *Clark*, *ante*, 373. *Grafton* v. *Eastern Counties Railway Co.* 8 Ex·h. 699.                                    *Demurrer sustained.*