## COMMONWEALTH *vs.* NATIONAL CONTRACTING COMPANY & another.

Suffolk.   March 3, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Contract*, Construction, Performance and breach, Effect of statute on existing contract. *Statute.*

A contract in writing, made in November, 1900, by a contracting company with the Commonwealth, acting by its board of metropolitan sewerage commissioners, for the construction of a section of a sewer for the metropolitan system of sewerage, provided that if at any time the contractor abandoned the work, " or if at any time the engineer shall be of opinion, and shall so certify in writing to the board, that the said work is unnecessarily or unreasonably delayed, . . . the board shall have the power and right to notify the contractor to discontinue all work," and shall also have power to complete the work at the expense of the contractor. The contract also provided that the word " board," when used in the contract, meant the board of metropolitan sewerage commissioners, and that the word " engineer " meant " the chief engineer of the said board, acting either directly or through his properly authorized agents." The contractor and a surety executed a bond conditioned upon the performance of the contract. Work was begun under the contract in December, 1900. St. 1901, c. 168, which went into effect on March 20, 1901, abolished the metropolitan water board (created

under St. 1895, c. 488,) and the board of metropolitan sewerage commissioners, and transferred all their "powers, duties and liabilities" to a new board called the metropolitan water and sewerage board, and provided that "no existing contracts . . . shall be effected hereby, but the [new] board . . . shall be the lawful successor of" the old ones. In January, 1902, one B., as "engineer sewerage works" certified to the new board that the work specified in the contract "had been unnecessarily delayed and abandoned," and recommended that it be completed by the board. The board acted on the suggestion, and, after the completion of the work and notice to and a demand upon the contractor, brought an action upon the bond against the contractor and the surety. At the trial of the action, the foregoing facts appeared, and there was evidence that B. had been chief engineer under the board of metropolitan sewerage commissioners, but that, after the consolidation of boards in 1901, one S. became chief engineer for the new board and B. "was engineer to the metropolitan sewerage works" and was in charge of the work on the section to which the contract referred, that he was not an authorized agent of S. and that S. had no connection with him or his department. The presiding judge directed a verdict for the Commonwealth and the defendants excepted. *Held,* that the exception should be sustained, and that the judge should have ruled that it was not proved that any person within the definition of "engineer" stated in the contract made the required certificate to the board as to a breach of the contract.

CONTRACT upon a bond in the sum of $50,000, conditioned upon the performance by the defendant contracting company of its contract with the plaintiff described in the opinion. Writ dated December 8, 1903.

Clause L, referred to in the opinion, was as follows:

"L. The contractor further agrees that if the work to be done under this agreement shall be abandoned, or if the work shall not be fully completed on the day herein stipulated, or if this contract shall be assigned by the contractor otherwise than as herein specified or if at any time the engineer shall be of the opinion, and shall so certify in writing to the board, that the said work is unnecessarily or unreasonably delayed, or that the contractor is wilfully violating any of the conditions or agreements of this contract, or is not executing said contract in good faith, or is not making such progress in the execution of the work as to indicate its completion within the required time, — the board shall have the power and right to notify the contractor to discontinue all work, or any part thereof, under this contract; and thereupon the contractor shall discontinue said work, or such part thereof as the board may designate; and the board shall thereupon have the power, by contract or otherwise, as it may determine, to employ such persons, and obtain such appliances

and tools, as the board may deem necessary, to work at and be used to complete the work herein described, or such part thereof as the board may deem necessary; and to use such implements, tools and materials of every description as may be found upon the line of said work, both such as enter into the completed work and such as are necessarily used in and about the same in the course of construction, and to procure other materials for the completion of the same; and to charge the expense of said labor and material, implements and tools to the contractor; and the expense so charged shall be deducted and paid by the Commonwealth out of such moneys as may be either due, or may at any time thereafter become due, to the contractor, under this contract, or any part thereof; and in case such expense is less than the sum which would have been payable under this contract if the same had been completed by the contractor, then the contractor shall be entitled to receive the difference; and in case such expense shall exceed the sum which would have been payable under this contract if the same had been completed by the contractor, then the contractor shall pay the amount of such excess to the Commonwealth, on notice from the board of the excess so due; but such excess shall not exceed the amount owed by the Commonwealth, under this contract, at the time the contractor is notified to discontinue said work, or any part thereof, plus the amount of the bond executed by the contractor for the performance of this contract."

There was a trial before *De Courcy*, J. At the close of the evidence, the defendants made several requests for rulings. Because of the opinion, only the following, the thirteenth request, is material:

" 13. There is no valid power to take away the contract upon the certificate of the engineer. So far as the contract made him judge in the cause by purporting to vest in him such power it is void. Nor is it proved that any person within the definition of engineer did certify."

The presiding judge refused to give the ruling requested, the case was submitted to the jury on one question only, and, after their answer was received, a verdict for the plaintiff was directed. Other facts are stated in the opinion. The defendants alleged exceptions.

*F. W. Grinnell,* for the defendants.

*D. Malone,* Attorney General, *& J. F. Curtis,* Assistant Attorney General, for the Commonwealth.

LORING, J. On November 12, 1900, the Commonwealth, acting by its board of metropolitan sewerage commissioners, made a written agreement with the National Contracting Company, one of the defendants in this action, for the construction of a specified section of a sewer for the metropolitan system of sewerage provided for by St. 1889, c. 439, and the acts in amendment therof.

The Contracting Company as principal, and the National Surety Company (the other defendant to this action) as surety signed a bond in the sum of $50,000, conditioned in substance for the Contracting Company's performing its contract and indemnifying and saving the Commonwealth harmless as therein stipulated.

By clause L of the contract the Contracting Company agreed that if the work should be abandoned, "or if at any time the engineer shall be of the opinion, and shall so certify in writing to the board, that the said work is unnecessarily or unreasonably delayed, . . . the board shall have the power and right to notify the contractor to discontinue all work," and in that case the board shall have power to complete the same at the expense of the contractor.

It is stated in the beginning of the contract between the Commonwealth and the Contracting Company that "Wherever the word 'Board,' or a pronoun in place of it, is used in this agreement the same is understood to mean the board of metropolitan sewerage commissioners of Massachusetts," and that "Wherever the word 'Engineer,' or a pronoun in place of it, is used in this agreement, the same is understood to mean the chief engineer of the said board, acting either directly or through his properly authorized agents, such agents acting within the scope of the particular duties intrusted to them."

Work was begun under this contract at one point on December 1, 1900, and at the other point on February 1, 1901.

On March 20, 1901, St. 1901, c. 168, was enacted and took effect upon its passage. That act created a board to be known as the metropolitan water and sewerage board. By § 5 of

that act the metropolitan water board (a board created by St. 1895, c. 488, to construct a metropolitan water supply) and the board of metropolitan sewerage commissioners were abolished, and "all the powers, rights, duties and liabilities of" the two boards which were abolished were transferred to the new board. This section ends with this provision: "No existing contracts, liabilities or suits shall be affected hereby, but the board hereby created shall in all respects and for all purposes whatsoever be the lawful successor of said metropolitan water board and of said board of metropolitan sewerage commissioners."

On January 16, 1902, one W. M. Brown, as "Engineer Sewerage Works," certified that the work done under the contract here in question "has been unnecessarily and unreasonably delayed and abandoned," and recommended "that the work be taken and completed as provided in Article L." This certificate was addressed to the new board. Acting under it the new board undertook to complete the work at the expense of the Contracting Company.

On the completion of the work by the new board, a demand was made by it on the Contracting Company for the payment of $178,355, as the excess paid by it for completing the work over and above the contract price. This demand was made on December 2, 1903, and on December 8, 1903, this action was brought.

The case was sent to an auditor. He found that $129,069.73 was the amount of the excess, and reported that in this action on the bond the plaintiff was entitled to recover the penal sum.

The case came on for trial by a jury. Some of the rulings asked for by the defendant were refused and exceptions taken. The only question submitted to the jury was whether the notice required by Section L of the contract was sent to the defendant National Contracting Company on December 2, 1903. This was answered in the affirmative, and thereupon the presiding judge directed a verdict for the plaintiff.

The thirteenth ruling asked for ended with these words: "Nor is it proved that any person within the definition of engineer did certify."

The auditor in his report found: "After its organization the new board appointed Wm. M. Brown who was and for ten years

had been the chief engineer of the old board, its engineer of the sewerage works under its charge, and he so continued and still is such engineer."

At the trial Brown was called as a witness by the defendants and testified "that in December, 1900, he was chief engineer of the metropolitan sewerage commissioners, that he ceased to hold said position when that board ceased to exist, that that board was succeeded by a consolidated board and that Frederick P. Stearns was the chief engineer of the consolidated board and had held that office since the consolidation, and that he (Brown) was not an authorized agent of Stearns; that at the time of trial he was engineer to the metropolitan sewerage works and that he had charge of the work on section 73 * and of the sewerage work during the construction of that section and that Stearns had no connection with him or his department."

The main question argued at the bar was the effect under the Constitution of the United States of the attempt made by St. 1901, c. 168, to transfer to the new consolidated board the powers given by section L of the contract to the board of metropolitan sewerage commissioners abolished by that act.

The strength of the argument for the Commonwealth was that the board, in completing the contract under section L on a certificate that the work was unnecessarily and unreasonably delayed, acted for the Commonwealth as one of the parties to the contract, and that the chief engineer in giving his certificate was the person and the only person who was to act as a *quasi* arbitrator within the rule applied to this contract in *National Contracting Co.* v. *Commonwealth*, 183 Mass. 89, and established by the earlier cases of *Palmer* v. *Clark*, 106 Mass. 373; *Flint* v. *Gibson*, 106 Mass. 391; *Robbins* v. *Clark*, 129 Mass. 145. See also the later cases of *Norcross* v. *Wyman*, 187 Mass. 25; *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1, 4.

But, if that be true, the difficulty with the case is that the engineer who gave the certificate of delay in the case at bar as a *quasi* arbitrator was not the engineer described in the contract.

By the terms of section L of the contract (construed in the

---

* This was the section to which the contract in question referred.

light of the definitions stated above given in the beginning of it) the engineer who was to act as *quasi* arbitrator was "the chief engineer of the said board acting either directly or through his properly authorized agents." After the consolidation of the two boards, Stearns was the chief engineer of the board, and Brown was not acting under him in any capacity, but was made an independent engineer of the sewerage works under the charge of the new board. The new board had a right, so far as the plaintiff was concerned, to put the sewerage works under an independent engineer, not their chief engineer and not subject to the orders of their chief engineer. But, when they elected to do that, they deprived themselves of the rights given by section L of the contract so far as their rights depended on a certificate by the engineer therein specified.

It follows that the concluding part of the thirteenth ruling asked for should have been given and the exception to the refusal to give it and that to the ruling directing a verdict for the Commonwealth on the answer made by the jury must be sustained.

*So ordered.*