[Civ. No. 369.   Third Appellate District.—December 26, 1907.]

# W. W. WYATT, Appellant, v. N. D. ARNOT, Judge, Respondent.

JUDGES—CIVIL ACTION FOR DAMAGES—FAILURE TO DECIDE CAUSE SUBMITTED.—A judge of the superior court is not liable to a civil action for damages at suit of any private party, either for any wrongful or malicious or corrupt judicial action, or for an alleged willful, premeditated and intentional omission, failure or refusal to decide a case submitted to him for decision, within the period of forty-one days between its submission and his resignation of his office as superior judge of the county.

ID.—TIME FOR DECISION—JUDICIAL DISCRETION—REMEDIES FOR ABUSE—PUBLIC POLICY AGAINST CIVIL ACTION.—The time within which a case should be decided as well as the manner of its decision is a matter of judicial discretion. If its decision is erroneous, or its discretion is abused, it may be remedied by appeal. After a long period of delay, his action, but not the manner of it, may be compelled by *mandamus*. If his action or omission is influenced by malice, corruption, or other bad motives, he may be impeached, but

he cannot, on grounds of public policy, be held liable in an action of damages therefor.

ID.—EFFECT OF CONSTITUTIONAL PROVISION—PERSONAL INCONVENIENCE. The constitutional provision that if a cause submitted is not decided within ninety days, the monthly salary cannot be drawn, has merely the effect of personal inconvenience and nothing more.

ID.—INSUFFICIENT COMPLAINT—PREPARATION TO DECIDE CASE NOT SHOWN—SATISFACTION OF MIND OF JUDGE NOT REVIEWABLE.—Where the complaint does not show that the judge to whom the case was submitted was prepared to decide it before his resignation, or that his mind had become satisfied as to how the case should be decided, it is wholly insufficient. No other judge or jury would be competent to determine whether his mind had been satisfied as to how the case should be decided when he resigned.

APPEAL from a judgment of the Superior Court of Alpine County. Wm. M. Finch, Judge presiding.

The facts are stated in the opinion of the court.

Richard S. Miner, and W. M. Thornburg, for Appellant.

George H. Thompson, and George Springmeyer, for Respondent.

HART, J.—The court below sustained a general demurrer to the complaint and thereupon caused judgment to be entered in favor of the defendant.

Plaintiff appeals from said judgment.

The complaint alleges that for a long time prior to and on and for some months after the sixth day of June, 1904, the defendant was a duly·elected, qualified and acting judge of the superior court of the state of California, in and for the county of Alpine; that on said sixth day of June, 1904, the appellant as plaintiff commenced a civil action in said superior court against one Thomas Barber by "filing a complaint in due form and substance," said action involving certain water rights claimed and owned by plaintiff in said Alpine county. A summons having been issued and served on said Barber, the latter in due time answered the complaint and thereafter said action was ready for trial upon the issues of fact arising upon said pleadings. On August 26, 1904, the respondent, as judge, etc., made an order setting

said action for trial, before the court, without a jury, on Thursday, September 15, 1904, at 2 o'clock P. M. The object of said action was to obtain a perpetual injunction, restraining said Barber from diverting the waters of certain streams in Alpine county from the lands of plaintiff.

According to the averments of the complaint, the respondent, having become a candidate for the office of judge of the superior court for El Dorado county, left Alpine county shortly after fixing the time for the trial of said cause, going to the first-named county for the purpose of conducting and managing his campaign for the said office of judge of the superior court for said county, and did not return to Alpine county until the sixteenth day of September, 1904, on which day he proceeded with the trial of said action. It is further alleged that "upon the twenty-seventh day of September, 1904, the evidence in said case being closed and arguments of counsel made, said cause was, by an order of said court, duly submitted for final decision and consideration, said N. D. Arnot then and there saying that he did not desire any authorities or briefs, but that he was then ready to submit said case for final decision and that he would decide the same in a short time and notify the attorney for the winning side to prepare findings of facts and conclusions of law."

The respondent, it is alleged, after the trial and submission of the case for decision, again departed from Alpine county, going to El Dorado county to resume his campaign for election to the office of judge of the latter county. Having been elected judge of the superior court of El Dorado county, at the general election held in November, 1904, the respondent, on the seventh day of November, 1904, resigned as judge of the superior court of Alpine county, and thereafter the governor of the state appointed the Hon. Clark Howard to fill the vacancy in said office of judge occurring through respondent's said resignation.

It is declared that plaintiff was required to retry said case, and that the same was tried anew before the said Hon. Clark Howard, between the dates of May 14 and 27, 1905, the judgment being in favor of plaintiff.

The gravamen of plaintiff's complaint is thus stated in paragraph XVII thereof: "That said defendant, N. D. Arnot, without the consent of plaintiff, willfully, premeditatedly, and intentionally, omitted, neglected, refrained, refused and de-

clined to decide said cause or to render any decision therein whatsoever, and totally omitted, refused and neglected to perform his duty in the matter of deciding said cause absolutely without any good or legal reason, cause or excuse, to the great damage, annoyance and wrong of plaintiff," etc.

The sole question presented by the demurrer is whether or not an action for damages by an individual will lie against a judicial officer for willful and intentional omission to perform a duty within the sphere of his authority as such judicial officer.

In some of the states it has been held that, "while a judicial officer will be protected against suits for damages resulting from an erroneous exercise of judgment and power, yet when he acts corruptly, maliciously, or beyond his jurisdiction his office is no protection." (*Reed* v. *Taylor,* 25 Ky. Law Rep. 1793, [78 S. W. 892].) The following cases maintain the same doctrine and hold that the line beyond which the principle of judicial protection will not extend and cannot be applied is where, first, a person possessing only special or limited judicial power does any act beyond the scope of his authority as such judicial officer, and, secondly, where, exercising his duly constituted jurisdiction, his act is the result of malicious or corrupt motives. (*Revill* v. *Pettit,* 3 Met. (Ky.) 314; *Reed* v. *Taylor,* 25 Ky. Law Rep. 1793, [78 S. W. 892]; *Stephens* v. *Wilson,* 24 Ky. Law Rep. 1832, [72 S. W. 336]; *Gault* v. *Wallis,* 53 Ga. 675; *Cope* v. *Ramsey,* 2 Heisk. (Tenn.) 197.)

But the rule, as it is declared in the California cases, and which, we think, is sustained by the soundest reasoning, does not go to the extent to which it is carried by the authorities cited by appellant and to which we have referred.

The earliest case in this state involving the discussion of the principle of protection to judicial officers is *Downer* v. *Lent,* 6 Cal. 94, [65 Am. Dec. 489]. In that case the board of pilot commissioners revoked the plaintiff's license as a pilot, and addressed to the shipmasters and consignees notice to that effect. Plaintiff brought suit against the board for damages, and, reversing the judgment of the court below based upon its order overruling the demurrer, the court, while not extensively reasoning the proposition, states the general principle underlying the rule as follows: "Whenever from the necessity of the case, the law is obliged to trust to the

sound judgment and discretion of an officer, public policy demands that he should be protected from any consequences of an erroneous judgment.''

In *Turpen* v. *Booth*, 56 Cal. 65 et seq., [38 Am. Rep. 48], where members of a grand jury, which indicted the plaintiff for illegal voting, were sued for damages for ''willfully, wantonly and maliciously'' returning said indictment, the supreme court, affirming the judgment for the defendants, held that ''a grand juror is not responsible in a civil suit for his action on the grand jury, however erroneous it may be, and however malicious the motive which produced it.'' The statute—section 927 of the Penal Code—at the time of the filing of the opinion in that case provided, as now, that ''a grand juror cannot be questioned for anything he may say or any vote he may give in the grand jury relative to a matter legally pending before the jury,'' etc.; but the court held that a grand juror, in the exercise of judicial or *quasi* judicial duties with which he is as such official clothed, is, independent of any statute on the subject, exempt from all liability in such an action by the principles of the common law. That case is particularly valuable because it reviews the leading cases dealing with the question before us.

*Pickett* v. *Wallace*, 57 Cal. 555, was an action for damages against certain members of the supreme court for adjudging plaintiff guilty of and committing him to jail for contempt of court. The complaint charged that the order of the court adjudging plaintiff guilty of contempt was false, willful and malicious. A demurrer to the complaint was sustained and the judgment affirmed. The court said: ''We are not aware of any principle upon which this action can be maintained. . . . In the recent case of *Turpen* v. *Booth, supra,* we had occasion to consider a case similar to this in principle, and in which we referred to the decision of the supreme court of the United States in *Bradley* v. *Fisher*, 13 Wall. 334, where it was held that judges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when the acts are in excess of their jurisdiction, and are alleged to have been done corruptly and maliciously.''

The only distinction between the cases cited and relied upon by appellant and those cited by respondent is, it will

7 Cal. App.—15

be perceived, that in the former it is held that where the act charged is maliciously and corruptly done an action will lie against a judicial officer, while in the latter it is held that, even if maliciously and corruptly done the judge is immune from liability in an action for damages.

The principle upon which the rule as laid down in this state rests is fully and clearly explained in *Weaver* v. *Devendorf,* 3 Denio, 120, as follows: "But I prefer to place the decision on the broad ground, that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges, from the highest to the lowest, to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power. It, of course, applies only when the judge or officer had jurisdiction of the particular case, and was authorized to determine it. If he transcends the limits of this authority, he necessarily ceases, in the particular case, to act as a judge, and is responsible for all consequences. But, with these limitations, the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself. The authorities on this subject are almost innumerable."

The case of *Stone* v. *Graves,* 8 Mo. 148, [40 Am. Dec. 131], is in line with the California view, and contains an able and instructive treatment of the question. *Yates* v. *Lansing,* 5 Johns. 282, *Cunningham* v. *Bucklin,* 8 Cow. 178, [18 Am. Dec. 432], and *Pratt* v. *Gardner,* 2 Cush. 63, [48 Am. Dec. 652], are to the same effect. "If," says Chief Justice Shaw in *Pratt* v. *Gardner,* 2 Cush. 63, [48 Am. Dec. 652], "an action might be brought against the judge by a party feeling himself aggrieved, the judge would be compelled to put in issue facts in which he has no interest, and the case must be tried before some other judge, who, in his turn, might be held amenable to the losing party, and so on indefinitely. ... His judgment may be revised in an appellate court, and reversed or affirmed; but he himself can be liable only to an impeachment for corruption or other misconduct. if there be any," citing cases.

But it would be useless to cite further authorities, of which there are many in consonance with the rule as it is declared in this state. The California doctrine is founded upon a deeply rooted principle of the common law and in none of the cases in which the rule is attempted to be modified or extended is there to be discovered any sound reason why the rule as it is followed in this state should be varied from.

The complaint in the case at bar, however, does not charge an affirmative act, or one of commission, involving a violation of duty on the part of respondent, but accuses him of a "willful, premeditated, and intentional *omission* and *refusal* to perform a plain duty." And, therefore, plaintiff contends, the case here, under the pleaded facts, does not come within the rule declared in the authorities cited by the defendant. If stripped of the adjectives or epithets—"willfully," "premeditatedly" and "intentionally"—the complaint would not contain a statement of facts (except perhaps the bare inference following the allegation of respondent's resignation without first deciding the case) which could not be applied to most any judge to whom complicated cases are submitted for decision and which is by no means inconsistent with perfect judicial propriety. The epithets referred to are, in truth, no more than mere conclusions of the pleader, and, while as against a general demurrer the complaint in this respect may stand, though upon an exceedingly frail foundation, it is certain that if it had been attacked by the more formidable weapon, a special demurrer, it could not for a moment be upheld. In other words, the facts of the complaint would, under a special demurrer, be held to state absolutely nothing, for the epithets could then be regarded as involving no more than the mere "calling names." It will be observed that the adjectives "malicious" and "corrupt" are not employed in the complaint, and even if they were so used, the facts should, nevertheless, be so pleaded as to enable the court to determine for itself whether the refusal to do a duty by a judge is or was "willful," "premeditated" and "intentional" or "malicious" or "corrupt."

But we are of the opinion that the demurrer was properly sustained upon the ground that in this case, as in those where a positive wrongful or malicious or corrupt judicial act has been charged, the judge is not liable in damages in an action by a litigant or private person.

We are, of course, in the dark as to the specific reason which actuated the. judge's failure to decide the case before his retirement from the court over which he presided and in which the action was tried. We are not, however, required to search for the reason, whatever it might have been, in this case. We are here only concerned with the facts as they appear in the complaint. We know of no rule of law in this state which requires a judge of the superior court to decide a case within any specified time after its submission to him. The constitution, it is true (sec. 24 of art. VI), provides that neither a judge of the superior court nor a justice of the appellate courts shall be allowed to draw or receive any monthly salary unless he shall take and subscribe an affidavit before an officer entitled to administer oaths, that no cause in his court remains undecided that has been submitted for decision for the period of ninety days; but that provision of the organic law, while imposing a penalty upon the judge for a failure to decide within the time limited, does nothing more, and the effect of it is, when enforced, only to subject the judge to a personal inconvenience. It does not say that he shall forfeit the right to his office, or be subjected to any other penalty than that prescribed. We think it is clear that the matter of the *time* when a judge may decide a case submitted to him for decision is as much a matter of judicial discretion and judgment as the matter of *how* he may decide it. In *Stone* v. *Graves*, 8 Mo. 148, [40 Am. Dec. 131], an action for damages, the declaration charged that the defendant, as a justice of the peace, "did corruptly and willfully refuse to enter a judgment in a suit pending before him." The court says: "The rendering a judgment is purely a judicial act. The justice must determine whether the record and proceedings before him will authorize such measure, and for this exercise of his judgment he is not responsible in a civil action."

If the judge abuses his discretion in the matter of the time *when* he decides the case—that is, if he prolongs his decision to an unreasonable length of time, so that it may be said that his conduct therein involves an abuse of discretion—we doubt not that he may through a proper proceeding be compelled to decide, but not in a particular way. If his decision is erroneous, his judgment is subject to review and correction by an appellate court. If in either case he is influenced by

malice or corruption or other bad motives, then he is liable to impeachment, but in neither case can he, upon principles of public policy, be required to answer to a private individual in the nature of an action for damages.

But the complaint alleges that the respondent stated, upon the submission of the cause for decision, that he would require the citation of no authorities, but that he would render his decision in a "short time." This allegation is intended, manifestly, as an indication that there was no reason why he should not have rendered his decision within a brief period of time from the submission of the case. But it is a matter of common knowledge among members of bench and bar that often a judge, after hearing the facts of a case, feels that it will require little time to apply the law thereto, and that he will have no difficulty in reaching a conclusion; but it also often happens in such cases that a judge finds, upon reviewing the record, that the facts are more complicated than they at first appeared to be, and thus finds the difficulty in deciding much greater than he had expected. It will, of course, not be doubted that a judge has a right to give a case such consideration as he feels may be necessary to reach a correct conclusion, or at least a decision satisfactory to himself, and that the delay in deciding could not of itself be the basis of a charge, even in a proceeding before an appropriate forum, that the judge was, in such delay, influenced by corrupt or other bad motives. At best it could only be a circumstance, whose force would be shattered without the support of other more persuasive circumstances.

According to the complaint, the respondent, up to the time of his resignation, had the case under advisement almost a month less than the time within which a judge of the superior court is required to decide a case as a condition precedent, under the terms of the constitution, to the drawing of his monthly salary. The complaint alleges that he resigned as judge for Alpine county on the seventh day of November, 1904. We may take judicial notice of the fact that the respondent was elected judge of the superior court for El Dorado county at the general election held in November, 1904, under the proclamation of the governor of the state, to fill an unexpired term of that office, and in such case, under the law, unlike that where one is elected for the full constitutional term of that office, he was entitled to qualify for and assume

the discharge of the duties of said office immediately upon the official declaration that he was so elected. And if the point were important in the determination of the main question, this could as reasonably as any other reason account for his resignation on November 7th as judge for Alpine county, thus enabling him to prepare to assume control of the new office to which he was elected. He had a right to resign, and, indeed, it was his duty to do so if he intended to qualify as judge for El Dorado county.

Undoubtedly, if he was prepared to do so, he ought to have decided the case which he held under advisement before his resignation as judge for Alpine; but there is to be found nothing in the averments of the complaint to warrant the conclusion that he had so mastered the record of the case as to have justified him in deciding it. In other words, the complaint fails to show that the judge was *prepared* to decide the case before or at the time of his resignation. And who was the proper person to determine that question? To sustain the complaint here would require us to hold that another judge or jury would be competent to determine whether Judge Arnot's mind had been *satisfied* as to how the cause should be decided. The absurdity of the proposition is too apparent to be mentioned. In the language of the opinion of the learned judge who heard this cause upon demurrer in the court below, "It was Judge Arnot's mind and not that of another judge or jury that was to be satisfied." And in the same opinion it is also well said: "It certainly cannot be left to another judge or jury to say that the proceedings were such as to even authorize the rendition of a judgment, much less that the case had been held under advisement for such length of time as to make it mandatory upon the judge to decide it within forty-one days between its submission and his resignation."

The complaint fails to state any cause of action against the respondent, and the order sustaining the demurrer was proper.

For the foregoing reasons, the judgment appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.