W. D. HUTCHINS, et al. *vs.* CHARLES D. MERRILL.

Kennebec. Opinion Sept. 17, 1912.

*Action. Arbitrator. Carelessness. Count. Contract. Damages. Lumber. Mathematical mistake. Negligence. Scale. Scaler. Surveyor. Quasi Arbitrator. (Appraisal).*

This is an action to recover damages resulting from the negligence of the defendant in scaling logs. The plaintiff made a written contract with one Foster to cut and haul the merchantable logs on the timber lands owned by them in the town of Guilford and then stipulated that the timber and wood should be scaled by a disinterested sworn surveyor and the defendant was selected by the parties to that contract to survey the logs cut thereunder and it was mutually agreed that his scale should be final and binding between the parties as the basis of payment under the contract. *Held:* that when parties have mutually agreed upon a surveyor to scale logs, his scale will be binding and conclusive upon them in the absence of fraud or mathematical mistake. It was admitted that the defendant was an experienced and competent scaler, and there was no allegation or evidence of fraud or collusion on his part in making his scale or mathematical mistake which would release the plaintiff from paying Foster for cutting and hauling according to the defendant's scale. But it was contended that he was negligent and careless in counting the logs, and accepted the count made by the teamsters, who hauled the logs. *Held;* that if the defendant exercised his best skill and judgment in making the scale by the mutual agreement of the parties that he should scale the logs and that his scale should be final and conclusive, the action will not lie for negligence in the exercise of his honest judgment.

On exceptions by defendant. Sustained.

This is an action to recover damages alleged to have resulted from the negligence of the defendant in scaling certain logs. The plaintiffs made a written contract with one Foster to cut and haul merchantable logs on the timber lands owned by them in the town of Guilford, and therein stipulated that the timber and wood should be scaled by a disinterested sworn surveyor, "to be paid by the plaintiffs. The defendant was selected by the parties to that contract, to survey the logs cut thereunder and it was mutually agreed that his scale should be final and binding between the parties as the basis of payment under that contract. There was a discrepancy between the scale made by the defendant in the woods and that made by another scale at the mill in Foxcroft of 49,326 feet. The plaintiff claimed to recover as damages the sum of $221.97, being the contract price of $4.50 per thousand feet on 49,326 feet.

The presiding Judge was requested to rule, "that if the defendant was appointed by plaintiff and Robert Foster to scale lumber cut by Foster, under contract with plaintiff, and in the contract it was then and there agreed that the scale so made by this defendant should be final and binding between the parties, then the defendant acted in the capacity of an arbitrator between the parties, or at least as a quasi arbitrator, and if the performance of his said duty requires the exercise of skill and judgment, then the defendant is not liable in this action, there being no proof or allegation of fraud."

The presiding Judge declined to give this instruction but upon this branch of the case, instructed the jury as follows:

"I say, too, that if upon all the testimony in this case, upon one side and the other, weighing it as I have suggested, you should find from a fair preponderence of the evidence, that you are convinced thereby that the defendant in this case was negligent or careless in the scaling of these logs, and that through his negligence and carelessness a mis-scale was made or a misstatement was made of the amount of the scale, and that thereby the plaintiffs paid any amount of money, under the original contract, that then this defendant is liable."

To which ruling and refusal to rule the defendant excepted.

The jury returned a verdict for the plaintiffs of $82.98.

Plea, the general issue and brief statement alleging good faith in the scaling of said lumber.

The case is stated in the opinion.

*Williamson, Burleigh & McLean,* for Plaintiff.

*C. W. Hayes,* for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

WHITEHOUSE, C. J. This is an action to recover damages alleged to have resulted from the negligence of the defendant in scaling certain logs. The plaintiffs, made a written contract with one Robert W. Foster to cut and haul the merchantable logs on the timber lands owned by them in the town of Guilford, and therein stipulated that the timber and wood should "be scaled by a disinterested sworn surveyor," to be paid by the plaintiffs. Foster was to receive $4.50 per thousand feet for cutting, yarding and hauling the logs; and the evidence tended to show that the fact that the plaintiffs were to pay the scaler was taken into consideration in fixing the price of cutting and hauling. It was not in controversy that the defendant was selected by the parties to that contract to survey the logs cut thereunder, and that it was mutually agreed that his scale should be final and binding between those parties as the basis of payment under that contract.

It was not in controversy that the scale made by the defendant in the woods made 1891 pieces and 106,500 feet of lumber, while another scaler at the mill in Foxcroft found but 1746 pieces and only 57,000 feet, showing a discrepancy of 49,326 feet. There was evidence, however, tending to show that after the logs were landed and before the booms were hung at the mill in Foxcroft, some of the logs were carried away by high water. But upon this point the testimony was conflicting, and the plaintiffs claimed to recover as damages the sum of $221.97, being the contract price of $4.50 per thousand on 49,326. The jury rendered a verdict for the plaintiffs of $82.98, showing that the discrepancy found by them was only 18,440 feet.

It was expressly admitted by the plaintiffs that the defendant was an experienced and competent scaler and there was no allegation or evidence of fraud or collusion on his part in making his scale. It is

admitted that there was no fraud or mathematical mistake which would release the plaintiffs from paying Foster for cutting and hauling according to the defendant's scale. But it was contended that he negligently omitted either to count the logs so that he knew the number of them, or to scale a sufficient number to estimate the average contents, but carelessly accepted the count made by the teamsters and averaged the number of feet per log from pencil marks found by him upon the logs.

. The defendant admitted that by reason of the difficulty in counting the logs as they were piled in the yards, he did not actually count all of them, but contended that he counted a sufficient number of them to satisfy his judgment, and that the tally kept by the teamsters of the number of pieces hauled by them was correct. He also earnestly contended that he scaled enough of the logs of the various sizes to satisfy his judgment that he had scaled a sufficient number to obtain a fair average of all the logs, and introduced evidence to support both of these contentions.

In view of the fact that the proper discharge of the duties of a scaler involves the exercise of skill and judgment, as well as absolute impartiality on his part, and of the mutual agreement of the parties that the defendant should scale the logs and that his scale should be final and conclusive, the defendant contended that he must be deemed to have acted in the capacity of an arbitrator, or quasi arbitrator, between the parties to the contract, and accordingly requested the presiding Judge to instruct the jury "that if the defendant was appointed by plaintiff and Robert Foster to scale lumber out by Foster, under contract with plaintiff, and in the contract it was then and there agreed that the scale so made by this defendant should be final and binding between the parties, then the defendant acted in the capacity of an arbitrator between the parties, or at least as a quasi arbitrator, and if the performance of his said duty requires the exercise of skill and judgment, then the defendant is not liable in this action, there being no proof or allegation of fraud."

The presiding Judge declined to give this instruction but upon this branch of the case, instructed the jury as follows:

"I say, too, that if upon all the testimony in this case, upon one side and the other, weighing it as I have suggested, you should find

from a fair preponderance of the evidence, that you are convinced thereby that the defendant in this case was negligent or careless in the scaling of these logs, and that through his negligence and carelessness a mis-scale was made or a misstatement was made of the amount of the scale, and that thereby the plaintiffs paid any amount of money, under the original contract, that then this defendant is liable." "When you go out to your rooms, you go out those three different times on to the bank of that river, with the defendant in this case, and ascertain from the testimony in this case what Mr. Merrill did there; determine if what he did there was done carelessly or negligently or not. That is the question for you to determine. If you conclude that it was done properly, that is the end of the case and your verdict should be for the defendant. On the other hand, if you are satisfied that it was done carelessly or negligently, then you are to determine what was the amount of the lumber under a fair and perfected scale that was cut and hauled and yarded in this operation."

The question thus presented is in some respects one of novel impression in this State and in all respects one of more than ordinary importance in determining the duties and responsibilities of quasi arbitrators and those agreed upon to perform judicial functions, as well as the rights of those affected by their acts.

It is a familiar rule of law in this State, established by a uniform line of decisions, that when parties have mutually agreed upon a surveyor to scale logs, his scale will be binding and conclusive upon them, in the absence of fraud or mathematical mistake. In *Bailey* v. *Blanchard,* 62 Maine, 168, it is said in the opinion that "neither party is at liberty to set aside or impeach the scale except on such evidence as would avoid the award of an arbitrator .mutually chosen." In *Bangor Savings Bank* v. *Insurance Company,* 85 Maine, 68, it was held that an appraiser to determine the amount of the damage or loss under an insurance policy may call in the aid of a third person skilled in a special branch of the appraisal, and may give to the estimate of such third person, such weight and credence as he sees fit, even to the point of founding his judgment upon that estimate, provided he adopts that as his real judgment. In the opinion the court say:

"It is not necessary to follow the different courts in their ingenious efforts to trace, for all cases, a line of distinction between a mere appraisement and an ordinary submission to arbitration. The result may be that such appraisers are properly considered arbitrators for some purposes but not in all respects. All are invested with quasi judicial functions, which must be discharged with absolute impartiality, without the improper interference of either party, or undue influence from any source. But appraisers may be said to act in the two-fold capacity of arbitrators and experts. In their character of experts they not only give effect to opinions based directly on their personal experience and knowledge, but also opinions founded in some measure upon information which may not be so direct and original as to be competent in itself as primary evidence. A witness called as an expert is expected before testifying to refresh his memory and confirm his judgment by an examination of authorities and conference with other experts. The umpire did precisely this and no more in the case at bar. After making an examination of the premises and certain estimates of his own, he made inquiry of an experienced and disinterested painter respecting the cost of painting. His conclusions may have been affected and modified to some extent by the information thus obtained, but he declares that his report correctly represented his own judgment. He was not only unconscious of any impropriety in seeking this information but was evidently engaged in a careful and conscientious effort to reach a just and correct appraisal."

So in *Earl* v. *Johnson,* (Minn.) 84 N. W., 352, it is said in the opinion of the court: "A person acting in the capacity of an appraiser under a lease, which requires a valuation to be fixed upon real property, is to all intents and purposes an arbitrator at common law. The proceeding is in effect, a common law arbitration."

So in *Palmer* v. *Clark,* 106 Mass., 373, it was stipulated that a party to a contract should only pay to the contractor a sum proportionate to the amount of earth filling upon a lot of land to be measured on the ground by the city engineer whose measurements should be conclusive between the parties. It was held by the court that such a reference to a third person in some respects differs from an ordinary submission to arbitration but that in one respect, it is to be treated precisely like an award under arbitration, in that "it

could not be impeached for mistake arising from error in judgment or in drawing conclusions from evidence and observation."

In *Flynt* v. *Gibson,* 106 Mass., 391, there was an agreement between a merchant and ship builder that certain alterations should be made in the vessel and that they should be made according to specifications under the inspection and subject to the approval of an experienced ship builder and that any question arising under the agreement was to be referred to this ship builder, whose decision should be final. It was held that this ship builder was thus made an arbitrator between the parties, and that his approval was binding upon them as an arbitrator, however much he might have erred in judgment.

In *Robbins* v. *Clark,* 129 Mass., 145, the parties contracted with the plaintiff to put certain spiral springs into the defendant's boiler, that these should be tested by the engineer, and if in the judgment of that engineer, there should be as much as 12% saving of fuel, the contract was to be binding. It was held that the decision rendered was to be considered as the award of a referee under submission to arbitration, and that it could not be "impeached on the ground of any error in judgment on his part in drawing conclusions from the evidence before him."

See also *Norcross* v. *Wyman,* 187 Mass., 25; *Evans* v. *County* of *Middlesex,* 209 Mass., 274.

It is an elementary principle respecting the judicial character and function and a firmly established rule of law that judges and arbitrators enjoy immunity from private actions for damages against them for judgments rendered while acting within their jurisdiction in the due course of the administration of justice. *Hoosac Dock and Elevator Co.* v. *O'Brien,* 137 Mass., 424; *Jones* v. *Brown,* 54 Iowa, 75; *Pratt* v. *Gardiner,* 2 Cush., 63; Cooley on Torts, 411; Cyc., Vol. 3, page 809; 12 Am. & Eng. Enc. of Law, 38; *Fath* v. *Koeppel,* 72 Wis., 39, N. W., 539.

The English cases clearly and strongly support the defendant's contention that an action will not lie against an arbitrator or quasi arbitrator for negligence in the exercise of his honest judgment. *Pappa* v. *Rose,* 7 L. R. C. P., 32, affirmed on appeal 7 L. R. C. P., 535; *Tharsis Sulphur and Copper Company* v. *Loftus,* 8 L. R. C. P., 1; *Stevenson* v. *Watson,* 4 L. R. C. P. Div., 148.

In *Tharsis S. and C. Company* v. *Loftus* above cited, the owners of a cargo and the ship owner agreed that the defendant, an average adjuster, should determine the proportion of loss which the ship and cargo had respectively to bear and that they would be bound by his decision. It was held that an action would not lie against the adjuster at the suit of the plaintiffs, or owner of the cargo for want of care in the performance of his duties as average adjuster, inasmuch as he was in the nature of an arbitrator between the parties.

In his opinion, Chief Justice Bovill said: "It must constantly happen that parties are dissatisfied with the decision of an arbitrator or quasi arbitrator, and yet we find, notwithstanding the facility with which speculative actions for negligence are brought upon the slenderest grounds, that there is no precedent for such an action for negligence as this. It appears to me that the principle upon which *Pappa* v. *Rose* (1) was decided applies to this case; and, looking to the inconveniences that would arise if an arbitrator were liable to an action for negligence, I am not disposed to lay it down for the first time that such an action is maintainable. I therefore think our judgment should be for the defendant."

Judge Keating said: "I am of the same opinion. I think that it would be a very dangerous principle to establish that a person in the position of the defendant may be liable to an action for negligence in the discharge of his functions."   .   .   .   "Now without deciding what is the proper definition of an arbitrator, it appears to me clear that the defendant is in the position of an arbitrator for the present purpose, inasmuch as he was a person by whose decision two parties having a difference agreed to be bound.   It appears to me that the safe rule when parties agree to be bound by the decision of a third party on any matter is, that they take him in such a case for better or for worse; and if he discharges his duty faithfully and honestly they must be satisfied."

Judge Brett concurring, said, "With respect to the first ground taken, it is admitted that as an arbitrator he would not be liable for want of skill, but it is suggested that he would be for want of care. It appears to me that there are the strongest grounds for deciding otherwise. There must have been thousands of such cases in which an allegation of want of care or dilligence might have been

made, and yet there is no case in the books in which such an action has been brought."

Judge Denman concurred for substantially the same reason.

In *Stevenson* v. *Watson,* supra, a contract provided that the architect might order additions to or deductions from the plans to build a hall and that the amount of them should be ascertained by the architect; that the contractor and the company would be bound to leave all questions or matters of dispute which might arise during the progress of the work, to the architect whose decision should be final and binding upon all parties. It was held that the functions of an architect in ascertaining the amount due to the plaintiff were not merely ministerial, but such as required the exercise of professional judgment, opinion and skill and that he therefore occupied the position of an arbitrator against whom no fraud or collusion being alleged, an action for negligence in the discharge of his duties could not lie.

In his opinion Chief Justice Coleridge said: "This claim is for that which has been over and over again attempted without success. It is an action against a man for the negligent performance of a duty, in the doing of which the exercise of judgment or opinion is necessary."  .  .  .  "I think this case is within the authority of the cases cited which decide that where the exercise of judgment or opinion on the part of a third person is necessary between two persons, such as a buyer and seller, and, in the opinion of the seller, that judgment has been exercised wrongly, or improperly, or ignorantly, or negligently, an action will not lie against the person put in that position when such judgment has been wrongly, or improperly, or ignorantly, or negligently exercised."

Judge Denman concurring, said: "But it seems to me that the architect is an arbitrator from the beginning to the end of the contract; he is throughout to have his eye on the work, and give certificates from time to time, all having reference to his final certificate, and, unless he gave the duty up altogether from the first appointment, he is from the first a person exercising judgment on a matter on which the parties cannot exercise judgment.

"I think, therefore, that the parties have trusted to him, and that from the beginning he must exercise his functions fairly and honestly between them, and that if he violates that duty he is liable to

an action. If he honestly performs them then he honestly performs his bargain, if it be a bargain, or his duty, if it be a duty, arising from the acceptance of the functions, and the parties must abide by it."

The Maine cases cited by the plaintiff relating to official inspectors, are not applicable. Their duties were prescribed by statute and they were not acting in the capacity of arbitrators by virtue of a mutual agreement between the parties. Neither is *Gates* v. *Young,* et al., 47 N. W., 275 (Wisconsin) shown to be a case in point. That was an action on a lumber inspector's official bond. The provisions of the statute of that state requiring such a bond and prescribing his duties are not in evidence; but it sufficiently appears in that case also, that the inspector was not charged with negligence while performing any service in the capacity of an arbitrator between the parties. The case, therefore, is not an authority in support of the plaintiff's contention in the case at bar.

It is obvious that the rule contended for by the plaintiffs would in every case expose the surveyor to the vexations and hazards of a suit at the instance of the dissatisfied party, and thus be destructive of the surveyor's independence and his power to discharge his duties as an arbitrator properly and efficiently. Such a doctrine would be fraught with consequences too mischievous to receive the sanction of the court.

The certificate must therefore be,

*Exceptions sustained.*