[Civ. No. 64463. Second Dist., Div. Three. Mar. 17, 1983.]

MARLOW S. BAAR, Plaintiff and Appellant, v.
BERT TIGERMAN et al., Defendants and Respondents.

[Civ. No. 65501. Second Dist., Div. Three. Mar. 17, 1983.]

ALFRED S. LUSTBADER et al., Plaintiffs and Appellants, v.
AMERICAN ARBITRATION ASSOCIATION et al.,
Defendants and Respondents.

[Civ. No. 65888. Second Dist., Div. Three. Mar. 17, 1983.]

DAVID EDELMAN, Plaintiff and Appellant, v.
AMERICAN ARBITRATION ASSOCIATION et al.,
Defendants and Respondents.

**COUNSEL**

McCollum & Silverii, Timothy D. McCollum, Glenn L. Silverii, Stone & Rohatiner, Arnold M. Stone and Marc E. Rohatiner for Plaintiffs and Appellants Baar and Edelman.

Fulop & Hardee, Lawrence R. Resnick, Kenneth B. Bley and Paul M. Kelley for Plaintiffs and Appellants Lustbader et al., and as Amici Curiae on behalf of Plaintiff and Appellant Baar.

Jones & Wilson, Robert E. Jones, William F. Flahaven, Lawrence J. Bistany, Irsfeld, Irsfeld & Younger and Ross R. Hart for Defendants and Respondents.

## Opinion

**KLEIN, P. J.**—Plaintiffs and appellants Baar, Lustbader, Edelman, et al. (appellants) in all three cases appeal from orders dismissing their complaints after the trial court sustained defendants, and respondents' American Arbitration Association (AAA) and Bert Z. Tigerman (Tigerman, and collectively, respondents) demurrers.

We decline to grant quasi-judicial immunity to an arbitrator who breaches his contract to render a timely award. Further, we hold that arbitral immunity does not extend to a private arbitration association for its administrative actions.

### Procedural and Factual Background[1]

These three cases arose from the same facts. In 1975, pursuant to the arbitration clause of their limited partnership agreement,[2] appellants engaged the AAA to administer arbitration proceedings. The AAA agreed to provide such services and selected Tigerman to act as arbitrator. Appellants agreed to pay both Tigerman and the AAA and did so.

Hearings commenced on November 1, 1976, and concluded on March 11, 1980. During this 4-year period Tigerman held about 43 days of evidentiary hearings as well as 10 days of closing arguments. Both sides submitted final briefs on July 17, 1980, and on July 18, 1980, the AAA deemed the arbitration submitted. The AAA set Tigerman's arbitration award deadline at August 17, 1980, 30 days after the final submission, as required by the AAA's rules.[3] On August 20, 1980, the AAA by letter requested and received an extension until November 30, 1980, for Tigerman to make an award.

However, Tigerman did not meet this deadline. In fact, as Tigerman had yet to make an award some seven months after the submission, appellants filed written objection to Tigerman's making any award. As a result, Tigerman lost

---

[1]The facts set forth are taken from allegations in the complaints.

[2]The "Certificate and Agreement of Limited Partnership" signed by appellants contains a clause that states ". . . dispute or disagreement shall be arbitrated pursuant to the rules and regulations of the American Arbitration Association . . . ."

[3]Section 40 of the Commercial Arbitration Rules of the AAA provides in relevant part: "The award shall be made promptly by the Arbitrator and, unless otherwise agreed by the parties, or specified by law, no later than thirty days from the date of closing the hearings, . . . ."

the authority vested in him by the AAA contract and the statutory law to make an award.[4]

Appellants filed complaints against Tigerman and the AAA alleging among other causes of action breach of contract and negligence.[5] The trial court held that arbitral immunity protected the respondents and sustained demurrers to all three complaints. Orders of dismissal followed, and these appeals were timely filed.

## CONTENTIONS

■ Appellants contend that the trial court erred in its finding that no cause of action was stated because the rule of judicial immunity announced in *Wyatt v. Arnot* (1907) 7 Cal.App. 221 [94 P. 86] also serves to shield from liability Tigerman, a private arbitrator, who failed to render a timely award.

They further claim that the trial court's ruling likewise granting immunity to the AAA for its administration of the arbitration constituted error.

Respondents seek to support the trial court's ruling.

## DISCUSSION

1. *Arbitral immunity covers only the arbitrator's quasi-judicial actions, not failure to render an award.*

Courts of this country have long recognized immunity to protect arbitrators from civil liability for actions taken in the arbitrator's quasi-judicial capacity. (See Domke, *The Arbitrator's Immunity From Liability: A Comparative Survey* (1971) 1971 U. Tol. L.Rev. 99.) Arbitral immunity, like judicial immunity, promotes fearless and independent decisionmaking. (*Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624, 629-630 [343 P.2d 931]; *Bradley* v. *Fisher* (1871) 80 U.S. 335, 347 [20 L.Ed. 646, 649]; *Hutchins* v. *Merrill* (1912) 109 Me. 313

---

[4]Code of Civil Procedure sections 1282-1284.2 provide for the conduct of arbitration proceedings and section 1283.8 thereof sets forth inter alia the time for making an award and objection thereto as follows: "The award shall be made within the time fixed therefor by the agreement . . . . The parties to the arbitration may extend the time either before or after the expiration thereof. A party to the arbitration waives the objection that an award was not made within the time required unless he gives the arbitrators written notice of his objection prior to the service of a signed copy of the award on him."

[5]Baar's first amended complaint listed the following causes of action: breach of contract, negligence, breach of fiduciary duty, breach of implied covenant of good faith, unjust enrichment, detrimental reliance, injurious falsehood and violations of constitutional rights. Edelman charged breach of contract and breach of implied convenant of good faith and fair dealing. Lustbader, et al. alleged breach of contract and negligence.

[84 A. 412, 415]; *Babylon Milk and Cream Co.* v. *Horvitz* (1956) 151 N.Y.S.2d 221, 224, aff'd (1957) 4 App.Div.2d 777 [165 N.Y.S.2d 717].) To this end, the courts have refused to hold judges and arbitrators liable for their judicial actions. As Judge Duniway of the Ninth Circuit wrote: "If [the arbitrator's] decisions can thereafter be questioned in suits brought against them by either party, there is a real possibility that their decisions will be governed more by the fear of such suits than by their own unfettered judgment as to the merits of the matter they must decide." (*Lundgren* v. *Freeman* (9th Cir. 1962) 307 F.2d 104, 117.)

Cases in which courts have clothed arbitrators with immunity have involved disgruntled litigants who sought to hold an arbitrator liable for *alleged misconduct in arriving at a decision*. (E.g. *Hoosac Tunnel Dock & Elevator Co.* v. *O'Brien* (1884) 137 Mass. 424; *Craviolini* v. *Scholer & Fuller Associated Architects* (1960) 89 Ariz. 24 [357 P.2d 611]; *Babylon Milk and Cream Co.* v. *Horvitz, supra,* 151 N.Y.S.2d at p. 221.) By contrast, the present case involves Tigerman's *failure to make an award* without any allegation of misconduct similar to that charged in the above cases.

Respondents' contention that this court should *extend* immunity to an arbitrator who never renders an award fails to appreciate the nature of the arbitrator-party relationship and misperceives the policy underlying arbitral immunity. To date, no case has extended arbitral immunity to cover such a situation. Indeed, the only court to address this question denied immunity. (*E. C. Ernst, Inc.* v. *Manhattan Const. Co. of Texas* (5th Cir. 1977) 551 F.2d 1026, 1033 rehg. denied in part (5th Cir. 1977) 559 F.2d 268, cert. denied (1978) 434 U.S. 1067 [55 L.Ed.2d 769, 98 S.Ct. 1246].)[6]

Tigerman seeks to equate judicial and arbitral status in contending that *Wyatt* v. *Arnot, supra,* 7 Cal.App. 221, is controlling. In that case Judge Arnot presided over Wyatt's trial but resigned from the bench to assume a similar post in a different county prior to deciding the case. Wyatt sued Judge Arnot for "the great damage, annoyance and wrong" caused by Judge Arnot's failure to rule. (*Id.,* p. 224.) The court granted immunity to Judge Arnot, and stated, "that in this case, as in those where a positive wrongful or malicious or corrupt judicial act has been charged, the judge is not liable in damages in an action by a litigant or private person." (*Id.,* at p. 227.)

---

[6]In *Ernst,* a construction subcontractor sought to hold liable an architect, McCauley, for delaying several decisions regarding the acceptability of certain building fixtures. McCauley occupied a dual role, as both an architect for the building owner and an arbitrator between the contractor and subcontractors. In denying arbitral immunity to McCauley for his procrastination, the court failed to differentiate adequately between these two roles.

Even though the outcome of *Ernst* supports our conclusion, the facts therein are so distinguishable that we hesitate to rely on the decision.

However, the many and significant differences between judicial proceedings and arbitrations dictate a different result in this case. To begin with, a judge receives power from the Constitution and the people and judicial action has far-reaching and precedent setting consequences. Indeed, our tripartite form of government has given the judiciary coequal responsibility for the maintenance of social, economic and governmental order in our society. An independent judiciary is essential to the preservation of a democracy and must be protected. Judicial action therefore demands that civil immunity be granted a judge in all aspects of decisionmaking.[7] (E.g. *Bradley* v. *Fisher, supra,* 80 U.S. at p. 347 [20 L.Ed. at p. 649]; *Stump* v. *Sparkman* (1978) 435 U.S. 349, 355-356 [55 L.Ed.2d 331, 338, 98 S.Ct. 1099]; *Platz* v. *Marion* (1917) 35 Cal.App. 241, 248 [169 P. 697].)

Some of the other differences include the fact that trials are public in nature and arbitration involves private action; judges must follow the law while arbitrators can disregard it; arbitrators' decisions carry little, if any, precedential value (see, e.g. *Singer* v. *Flying Tiger Line Inc.* (9th Cir. 1981) 652 F.2d 1349, 1356); and arbitration cannot determine rights and obligations of anyone not a party to the arbitration contract and cannot decide any questions not presented by the parties' submission (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341]; *Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249]; *Cothron* v. *Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 860 [163 Cal.Rptr. 240]). On the other hand a judge has the duty to decide all cases coming before the court that are within the court's jurisdiction. (*Pierson* v. *Ray* (1967) 386 U.S. 547, 554 [18 L.Ed.2d 288, 294, 87 S.Ct. 1213].)

Because the judicial and arbitral roles are so different in many fundamental respects, *Wyatt* is not helpful to Tigerman in this case.

Although the courts have looked favorably upon arbitration as an alternative to litigation in the courts (*Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 751 [163 Cal.Rptr. 223]; *Hill* v. *Aro Corporation* (N.D.Ohio 1967) 263 F.Supp. 324, 326), arbitration remains essentially a *private contractual arrangement* between parties. (*Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d at p. 479; *Cothron* v. *Interinsurance Exchange, supra,* 103 Cal.App.3d at p. 858; *Unimart* v. *Superior Court, supra,* 1 Cal.App.3d at p. 1045.) As the New York Court of Appeals observed, "[a]rbitration is essen-

---

[7]The court in *Wyatt* v. *Arnot, supra,* 7 Cal.App. at pages 228 and 229 discussed the 90 day rule set forth in article VI of the California Constitution which requires judges to swear that no cases remain undecided for more than 90 days prior to receiving their monthly salaries, and that errant judges are liable to impeachment.

Further, section 18 of the same article provides that a judge may be censured or removed under certain circumstances, including "persistent failure or inability to perform [a] judge's duties."

tially a creature of contract, a contract in which the parties themselves charter a private tribunal for the resolution of their disputes." (*Astoria Medical Group* v. *Health Ins. Plan* (1962) 11 N.Y.2d 128, 132-133 [227 N.Y.S.2d 401, 182 N.E.2d 85].)

The contractual agreement in this case specifically sets forth the time period within which Tigerman had to render his award. A judge has discretion in terms of when a decision is made, but an arbitrator loses jurisdiction if a timely award is not forthcoming. (*Wyatt* v. *Arnot, supra,* 7 Cal.App. at p. 228; Code Civ. Proc., § 1283.8 *General Mills Corp.* v. *Precision Lodge 1600* (1960) 183 Cal.App.2d 586, 587 [6 Cal.Rptr. 910].) While we must protect an arbitrator acting in a *quasi-judicial capacity,* we must also uphold the contractual obligations of an arbitrator to the parties involved.

Tigerman's further argument that a denial of immunity in this fact situation will foster bad decisionmaking by imposing the pressures of an arbitrary time limit on arbitrators does not convince us that immunity is necessary. Tigerman's position disregards the fact that the AAA itself sets the time limits on the rendering of an award and that Tigerman agreed to abide by the AAA rules. The AAA rules, as well as Code of Civil Procedure section 1283.8, allow for an extension of time within which an arbitrator must announce an award. Here Tigerman had the benefit of such an extension. The flexibility provided by these provisions ensure arbitrators reasonable time for decisionmaking.

We make the observation that arbitration is a preferred means of settling disputes because of its *speed and certainty.* (E.g. *Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 702 [77 Cal.Rptr. 100].) Granting Tigerman immunity for failure to make an award runs directly counter to these policy considerations.

The holdings from other jurisdictions in the few similar fact situations that have reached the courts support our position that arbitration is contractual in nature and that breach of an arbitration contract will result in a cause of action to the damaged party. An Iowa court found an arbitrator immune from a suit for corruption in the performance of his duties but went on to hold that the alleged corruption breached an implied term of fair dealing in the *contract* between the arbitrator and the parties. (*Bever* v. *Brown* (1881) 56 Iowa 565 [9 N.W. 911].) Similarly, *Hornet* v. *Godfrey* (1883 Pa.) 3 Luzerne Leg.Reg. R. 10 held that the arbitrator could not collect fees from the parties due to failure to make a timely award. (Accord *Boone* v. *Reynolds* (1814 Pa.) 1 Serg. & R. 231.)

Bearing in mind that an arbitrator is not a judge and that arbitration is not a judicial proceeding, we assume the truth of the allegations contained in the complaints (*South Shore Land Co.* v. *Petersen* (1964) 226 Cal.App.2d 725, 732 [38 Cal.Rptr. 392].) Here the trial court sustained Tigerman's demurrer solely on the grounds of arbitral immunity, and thus did not evaluate whether a cause of action was stated in any of the several legal theories put forth. As a consequence, counsel on appeal did not brief the subject of the sufficiency

of appellants' pleadings in those particulars. Nor do we address the subject, except to hold that since our decision gives credence to the complaint stating a cause of action in breach of contract, the trial court's ruling must be overturned.

2. *Arbitral immunity does not protect the sponsoring organization when the arbitrator is not immune from liability.*

Few courts have addressed the question of immunity for organizations that sponsor and administer arbitrations. Nevertheless, the cases provide that these organizations derive their immunity from the arbitrator. (*Corey* v. *New York Stock Exchange* (6th Cir. 1982) 691 F.2d 1205, 1208-1211; *Melady* v. *South St. Paul Live Stock Exchange* (1919) 142 Minn. 194 [171 N.W. 806].) In *Corey,* the 6th Circuit found that the plaintiff sued the arbitration's sponsoring organization to collaterally attack the arbitrator's award. Holding the organization immune the court observed: "[e]xtension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusionary. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association." (*Corey* v. *New York Stock Exchange, supra,* 691 F.2d at p. 1211.) Thus, when immunity does not attach to the arbitrator, it cannot protect the sponsor. We declined to grant immunity to Tigerman and so find no immunity for the AAA.

Further, even had we found Tigerman immune, we would not be compelled to extend it to the AAA because of the factual differences between *Corey* and the present case. Here, appellants do not seek to circumvent the arbitrator's immunity in order to attack the award. Indeed, there is no award to attack. Rather, the appellants seek to hold the AAA liable for Tigerman's inaction and the AAA's alleged improper administration.[8]

---

[8]The distinction between misfeasance and nonfeasance, while important in other areas of the law, clearly has no application here. As Prosser points out, liability for nonfeasance has developed to encompass those persons who have undertaken a duty to perform a service. In tracing the historical development of nonfeasance liability, Prosser found that "[w]ith the development of the action of assumpsit, this principle was extended to anyone who, for a consideration, has undertaken to perform a promise—or what we now call a contract." (Prosser, Law of Torts (4th ed.1971) p. 339.)

In the area of tort, nonfeasance liability has developed along similar lines. "[A] physician who starts in to treat a patient and then neglects or abandons him is held liable in tort for breach of a duty undertaken. The question appears to be essentially one of whether the defendant has gone so far in what he has actually done, and has got himself into such a relation with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him." (*Id.,* at p. 340.)

Assuming for the purpose of this appeal the truth of appellants' allegations, a trial court could easily find that Tigerman and the AAA affected the appellants adversely rather than merely withholding a benefit.

*3. The AAA did not act in an arbitral capacity and therefore its actions standing alone do not merit immunity.*

The AAA also cites *Rubenstein* v. *Otterbourg* (1973) 78 Misc.2d 376 [357 N.Y.S.2d 62], as precedent for a claim of immunity. We find *Rubenstein* inapposite. The plaintiff therein sought to hold an arbitrator and the AAA liable for damages for improper conduct in an arbitration. The plaintiff charged that after the arbitrator refused to disqualify himself for conflict of interest, the AAA failed to intervene despite knowledge of all the facts which presumably showed that the conflict existed. The New York court granted immunity to the AAA. It reasoned that the AAA's determination not to intervene was itself quasi-judicial in nature. In other words, the *Rubenstein* court granted immunity to the AAA to protect the AAA's own decisionmaking.

The present case differs in that the appellants' contentions are based on the AAA's failure to properly *administer* the arbitration proceedings. The appellants do not seek to hold the AAA liable for any discretionary act similar to that taken in *Rubenstein*. The AAA was not involved in the decision-making process, but instead acted only to oversee that process.

Appellants alleged in their complaints that the AAA failed to exercise reasonable care in the *selection* of Tigerman as an arbitrator in the first instance, and that the AAA thereafter failed to properly administer the arbitration, and thereby stated a cause of action as against demurrers.

### DISPOSITION

The orders of dismissal are reversed and remanded.

Lui, J., and Danielson, J., concurred.

Petitions for a rehearing were denied April 15, 1983, and the opinion was modified to read as printed above. Respondents' petitions for a hearing by the Supreme Court were denied June 29, 1983. Mosk, J., Kaus, J., and Grodin, J., were of the opinion that the petitions should be granted.