STATE OF NEVADA, on Relation of HARRY M. WATSON, Petitioner, *v.* PETER MERIALDO, State Controller of the State of Nevada, Respondent.

No. 3786

March 29, 1954.                    268 P.2d 922.

*George E. Marshall,* of Las Vegas, for Petitioner.

*W. T. Mathews,* Attorney General, *George P. Annand, William N. Dunseath* and *John W. Barrett,* Deputy Attorneys General, all of Carson City, for Respondent.

## OPINION

By the Court, BADT, J.:

This petition presents for determination the question of the constitutionality of sec. 8433, N.C.L.1929, as amended, requiring a district judge, before he may receive his monthly salary, to file an affidavit with the controller showing that no cases remain undecided which have been submitted to him for more than ninety days. We hold that the statute in question violates constitutional limitations.

Petitioner is the duly elected, qualified and acting judge of the Seventh judicial district court of the State of Nevada, in and for the counties of White Pine and Lincoln and the legislature heretofore fixed his salary at $7,200 per year, payable in monthly installments. He alleges that respondent state controller refuses to deliver his warrants for his salary for the past seven months, which refusal is based upon the petitioner's failure to execute the affidavit required by the statute, but that such statute is in violation of the constitution, is void and of no effect and is no justification for the controller's refusal to deliver the warrants.[1]

The act in question is sec. 8433, N.C.L.1929, as

---

[1] When this matter became at issue before us upon the complete filing of the briefs, counsel for both parties tendered an oral stipulation for the submission thereof on the briefs and without oral argument. We entered an order refusing to honor this stipulation, for the reason that many matters in connection with petitioner's refusal to sign the affidavit had come to the attention of the court and caused the court great concern and that the court desired to make certain inquiries of counsel. Upon the conclusion of the oral argument we ordered that there be furnished to the court certificates from each county clerk in the state indicating what if any cases argued and submitted to petitioner remained undecided after being submitted for a period over ninety days. The attorney general thereafter filed certificates from each county clerk, from which it appeared that no cases remained thus undecided. We thereupon ordered this matter submitted.

amended by Stats. 1953, ch. 54, p. 49, reading as follows:

"Section 1. Section 5 of the above-entitled act, being section 8433, N.C.L.1929, is hereby amended to read as follows:

"Section 5. Each district judge shall, before receiving any monthly salary, file with the clerk of each county within his district and with the state controller, an affidavit in which shall be set forth the number of cases, motions or other matters submitted to him as such district judge, regardless of the district in which he was sitting at the time of the submission of said cases, motions or other matters which remain undecided, and that no such case, motion or matter remains undecided which has been submitted for a period of more than ninety days.

"Sec. 2. This act shall be effective upon passage and approval."

The section before the 1953 amendment, enacted in 1913, was restricted to cases submitted to the judge when sitting in his own district. The original act, Stats. 1891, ch. 25, p. 28, was entitled "An Act to prevent unnecessary delay in rendering judicial decisions by the Courts of this State." It contained but two sections and required among other things that "No * * * Judge of the District Court * * * be allowed to draw or receive any monthly salary unless he shall take and subscribe an affidavit * * * that no cause in his court remains undecided that has been submitted for the period of ninety days." Section 2 required the filing of the affidavit with the state controller. The 1913 act, amended in 1953, is entitled, in part, "to prevent unnecessary delay in rendering judicial decisions." The constitutional provisions involved are section 15 of Article VI of the constitution, concerning the compensation of judicial officers and section 1 of Article III concerning the division of the powers of the government. The first of these reads, in part, as follows:

"COMPENSATION OF JUDICIAL OFFICERS. 15. The justices of the supreme court and district judges shall each

receive quarterly for their services a compensation to be fixed by law, and which shall not be increased or diminished during the term for which they shall have been elected, * * *."

The second reads as follows:

"The powers of the government of the State of Nevada shall be divided into three separate departments—the legislative, the executive, and the judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

In Ratliff v. Sadlier, 53 Nev. 292, 299 P. 674, 675, a judgment was attacked as being coram non judice and void because in violation of sec. 5227, Revised Laws of 1912, reading in part: "Upon a trial of a question of fact by the court its decision must be given * * * within thirty days after the cause is submitted for decision." This court held the statute to be directory merely.

In the recent case of Waite v. Burgess, 69 Nev. 230, 245 P.2d 994, 996, a motion was made to dismiss the appeal by reason of the statute providing that unless sureties on an appeal bond, after exception to their sufficiency, justify before the judge within five days, on notice, the appeal shall be regarded as if no such undertaking had been given. The filing of the undertaking being a jurisdictional requirement, such failure would then have invalidated the attempted appeal. The appellant had appeared with his sureties, within time, for such justification but the matter was set down by the judge for a later date beyond the five-day period. This court held that the statute "should be construed as demanding diligence on the part of the litigants rather than as an oppression upon the judge's duties of deliberation and of orderly administration of justice * * * [and] should be regarded as directory only," when relating to judicial functions. Of special importance to the present case is this language used by the court:

"It is recognized that legislation undertaking to require judicial action within fixed periods of time is an unconstitutional legislative interference with judicial functions. State v. Johnson, 224 Ind. 540, 69 N. E. 2d 592, 168 A.L.R. 1118; Atchison, Topeka & Santa Fe Ry. Co. v. Long, 122 Okla. 86, 251 P. 486; Schario v. State, 105 Ohio St. 535, 138 N. E. 63, 64. In Schario v. State, supra, it was stated: 'Whether or not justice is administered without "denial or delay" is a matter for which the judges are answerable to the people, and not to the General Assembly of Ohio. Manifestly, when a case can be heard and determined by a court must necessarily depend very largely upon the court docket, the quantity of business submitted to the court, the nature, the importance, and the difficulties attending the just and legal solution of matters involved'."

The Indiana, Oklahoma and Ohio cases cited in Waite v. Burgess, supra, all hold firmly, under constitutional provisions similar to our own, that the legislative branch of the government may not constitutionally limit the judicial branch in respect to the time within which it shall determine cases within its jurisdiction. They held, under similar but not precisely the same conditions, that old and well-established principles were involved—the separation and independence of the three branches of government. Nothing can be clearer than that, under our constitutional provision, our courts "possess the entire body of the intrinsic judicial power of the state." [224 Ind. 540, 69 N.E.2d 594.] This being so, neither the legislative nor the executive branches of the government may assume to exercise any part of that judicial power, and the district court cannot be directed or controlled or impeded in its functions "by either of those branches." State ex rel. Kitzmeyer v. Davis, 26 Nev. 373, 68 P. 689. See also Ex Parte Tully, 4 Ark. 220, 38 Am.Dec. 33.

Respondent seeks to distinguish the cases above

referred to by pointing to language in those decisions indicating that the action taken in striking down the several legislative acts involved was because such acts sought to deprive the court of a constitutionally vested jurisdiction to hear and determine certain cases. We think the cases go much further. They emphasize the wisdom of constitutional provisions guarding the independence of the judiciary and protecting it against all unwarrantable interference concerning the payment of salaries. They deplore any attempt that might "bend the judiciary into mere instruments" of the will of the legislature or might "drive or degrade judges from the bench" by depriving them of parts of their compensation. Even in California, where provisions similar to our statute are written into the state constitution, it was said in Wyatt v. Arnot, 7 Cal.App. 221, 94 P. 86, 89: "We think it is clear that the matter of the time when a judge may decide a case submitted to him for decision is as much a matter of judicial discretion and judgment as the matter of how he may decide it."

Respondent contends that sec. 8433, N.C.L.1929, as amended, Stats. 1953, 49, imposes no forfeiture for failure of a judge to decide a case within ninety days after submission, deducts nothing from his salary and subjects him only to a delay until such time as he may bring himself within the statute. We do not find this convincing. The withholding of a judge's salary for weeks or months might indeed be just as embarrassing and detrimental as an actual forfeiture of a part of such salary. Records submitted on appeal to this court sometimes contain thousands of pages of testimony and exhibits. A jury case recently tried in one of our district courts occupied some fifty court days. Consideration of a motion for new trial in that case might have required a study of that entire record and a decision could not conceivably have been expected within ninety days of the submission of the motion. Respondent suggests that in

cases of that kind counsel are ordinarily agreeable to stipulating for a resubmission. This does not remove the onus of the statute. Counsel may refuse to stipulate, and an order of resubmission may not be made, under section six of the act, without written stipulation.

Respondent refers us to several California cases but, as we have noted, the California provision appears in its constitution. Respondent concedes that if the statute commanded the judge to render his decision within ninety days, such situation would come within the condemnatory language found in the cases cited. The coercive means employed by the statute approach so closely to the actual command, however, that we do not consider the distinction important.

Respondent relies on State v. Atherton, 19 Nev. 332, 10 P. 901, upholding the provisions of section 6 of the Act of March 4, 1885, Stats. 1885, 60, General Stats. 1885, sec. 2490, providing for payment of salaries monthly to the district judges out of the special fund created by the quarterly payments into said fund by the treasurers of the respective counties of the sums fixed by the redistricting act. This court there contented itself with the simple statement that there was no constitutional objection to such method of payment, and that the provision for payment in monthly installments did not violate the provisions of section 15 of Article VI of the constitution. We do not find in the Atherton case any support for the present act.

We conclude that under the act in question the limitations placed by the legislature upon the right of a district judge to be paid his compensation exceeded the grant of power provided in section 15 of Article VI, and that the coercion placed upon district judges to cause them to file their decisions within ninety days was likewise a violation of the provisions of section 1 of Article III of the state constitution. Such being the case and the state controller having advanced no other reason for

his refusal to deliver the warrants in question, the writ of mandate must issue as prayed for. It is so ordered.

EATHER, C. J., and MERRILL, J., concur.

April 12, 1954.                    268 P.2d 922, 926.

*George E. Marshall,* of Las Vegas, for Petitioner.

*W. T. Mathews,* Attorney General, *George P. Annand, William N. Dunseath* and *John W. Barrett,* all of Carson City, Deputy Attorneys General, for Respondent.

ON PETITION FOR REHEARING

*Per Curiam:*

Respondent, conceding that the original petition attacked only sec. 8433, N.C.L.1929, as amended, being sec. 5 of "An Act in relation to courts of record, to prevent unnecessary delay in rendering judicial decisions," etc., now asserts that our order granting the precise relief prayed for, leaves in doubt the validity of the remaining seven sections of the entire act. He calls our attention to the fact that sec. 2 of the act, being sec. 8430, N.C.L.1929, requires, among other things, that each of the supreme court justices, before receiving any monthly salary, shall file in his office an affidavit reciting

that no case has been assigned to him for preparation of opinion for more than ninety days, etc.; that we have not struck down said sec. 2 and that the respondent state controller needs the aid of this court as a guide to his official duties under sec. 2 and other sections of the act.

We think it clear from our opinion that sec. 2 of the act, being sec. 8430, N.C.L.1929, is subject to the same infirmities as sec. 5 (sec. 8433, N.C.L.1929) and we so hold. No official duties of the state controller are affected by any of the remaining six sections, and further consideration of such sections would be unwarranted in this proceeding.

Rehearing denied.