No. 82-199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

ALFRED B. COATE,

                Plaintiff and Respondent,

    vs.

E. V. "SONNY" OMHOLT,

                Defendant and Appellant.

---

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mike McGrath argued, Assistant Attorney General,
         Helena, Montana
        Jayne F. Mitchell argued, Helena, Montana

    For Respondent:

        Leaphart Law Firm, Helena, Montana
        W. William Leaphart argued, Helena, Montana

    For Amicus Curiae:

        John W. Northey, Helena, Montana

---

                Submitted:  December 9, 1982

                  Decided:  April 28, 1983

Filed: APR 28 1983

*Ethel M. Harrison*

                        Clerk

Hon. Daniel J. Shea
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

Date:

Re:     May 26, 1983

        Coate v. Omholt, No. 82-199, April 28, 1983

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

Page 2, line 13 from bottom -- Art. III should read Art. II.
  (Also cited on p. 11).
Page 6, line 22 -- 4 S.W. 75 should read 4 S.W. 751.
Page 7, line 11 -- Shario v. State -- Schario v. State.
Page 7, line 5 from bottom -- 388 N.E. 762 should read 388 N.E. 2d 762

WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendant, E. V. "Sonny" Omholt, Auditor of the State of Montana, appeals from a Lewis and Clark County District Court judgment which declared unconstitutional two statutes which imposed sanctions on district judges and supreme court judges if decisions are not reached or opinions are not written within the procedural constraints and time limits set by the statutes.

The District Court declared the statutes unconstitutional on three grounds. First, in attempting to regulate the internal operations of the judiciary by imposing procedures and time limits for reaching decisions, the statutes violated the separation of powers doctrine as set forth in Article III, § 1 of the Montana Constitution. Second, by requiring the forfeiture of one month's pay for a violation, the statutes violated Article VII, § 7(1) of the Montana Constitution which provides that judicial salaries must not be diminished during a term of office. Third, the forfeiture of pay provisions violated the impairment of contract clauses of Art. I, § 10 of the United States Constitution and Art. III, § 31, of the Montana Constitution. We affirm.

The statutes involved, sections 3-2-104 (applicable to supreme court justices) and 3-5-212, MCA (applicable to district judges), operate in essentially the same way. We summarize the operation of these statutes and we set forth the full text of the statutes in Appendix A to this opinion.

Both statutes provide that decisions must be reached or opinions written within 90 days of submission. If not, another procedure is invoked to allow 30 more days to reach the decision or write the opinion. On or before the 90th day of submission, a district judge or supreme court justice, must file an affidavit to the chief justice giving the case name and number and the reason for

2

delay. The parties involved in the case must be given a copy of the affidavit. Upon timely filing of the affidavit, the judge or justice has an automatic 30 more days to reach a decision or to write the opinion. To justify further delay a judge or justice must file another affidavit to the supreme court before the expiration of the 120th day, which affidavit must establish good cause for the delay. A majority of the supreme court must determine whether additional time should be given to reach the decision or to write the opinion.

The statutes are imprecise as to when or how a violation occurs if the affidavits are timely filed. However, if no affidavit is filed on or before the 90th day of submission, or on or before the 120th day of submission, a violation is automatic. It appears also that if an affidavit is timely filed but good cause is not shown for an extension of time beyond the 120 days, either the supreme court by a majority vote, or a party to the case, may refer the case to the judicial standards commission.

Upon the commission receiving the matter it _appears_ that further proceedings and a hearing are contemplated before the commission, although the statute does not so state. Nonetheless, once the judicial standards commission has acted and made a recommendation to the supreme court, it _appears_ that the supreme court must then sit as a court of review to determine whether the commission's recommendation was proper. If there has been a failure to file an affidavit, it appears the commission must find a violation, and it further appears the supreme court would likewise have to find a violation. On the other hand, if the question is one of good cause for the delay, it appears that the commission and this Court are granted some discretion in determining whether a violation has occurred.

3

If a violation is found this Court is compelled by statute to direct the state auditor to withhold a month's pay from the district judge or justice—this pay is forfeited.

The plaintiff, a district judge of the Sixteenth Judicial District, challenged the constitutionality of these statutes, and they were properly held to be unconstitutional on three grounds.

PART I.   SEPARATION OF POWERS

The essential question is whether the legislature, in enacting time limits and setting forth the enforcement procedures for judicial decision-making, has exercised a power that properly belongs to the judicial branch of government.  We conclude that, based on the separation of powers clause of our state constitution, that the question of when cases shall be decided and the manner in which they shall be decided, is a matter solely for the judicial branch of government.

The separation of powers provision, contained in the general government section of Art. III, § 1, 1972 Montana Constitution, provides:

> "The power of the government of this state is divided into three distinct branches—legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

By this provision, each branch of government is made equal, coordinate, and independent.  By this we do not mean absolute independence because "absolute independence" cannot exist in our form of government.  It does mean, however, ". . . that the powers properly belonging to one department shall not be exercised by either of the others."  State v. Johnson (1926), 75 Mont. 240, 243 P. 1073; State ex rel. Judge v. Legislative Finance Com.  (1975), 168 Mont. 470, 543 P.2d 1317.  With only one exception (State ex

4

rel. Emerald People's Util. v. Joseph (Ore. 1982), 640 P.2d 1011),
the supreme courts of those states called on to answer the question
have declared that the essential nature of a constitutional court
encompasses the right to determine when a judicial decision will be
made.

These holdings are best summarized in a law review article
entitled, <u>Legislative</u> <u>Control</u> <u>Over</u> <u>Judicial</u> <u>Rule-Making</u>: <u>A</u> <u>Problem</u>
<u>in</u> <u>Constitutional</u> <u>Revision</u> (1958), 107 U. Pa. L.Rev. 1, 31-32:

> "What the holdings do suggest is that there is a
> third realm of judicial activity, neither
> substantive nor adjective law, a realm of
> 'proceedings which are so vital to the efficient
> functioning of a court as to be beyond
> legislative power.' This is the area of minimum
> functional integrity of the courts, 'what is
> essential to the existence, dignity and
> functions of the court as a constitutional
> tribunal and from the very fact that it is a
> court.' Any statute which moves so far into
> this realm of judicial affairs as to dictate to
> a judge how he shall judge or how he shall
> comport himself in judging or which seeks to
> surround the act of judging with hampering
> conditions clearly offends the constitutional
> scheme of the separation of powers and will be
> held invalid."

The courts have recognized as the authors state, that certain
judicial functions require that the courts alone determine how those
functions are to be exercised. Even assuming the right under many
state constitutions, and indeed, the need for the legislature to be
involved in rule-making where the courts and the legislature have
concurrent rule-making power, the authors state:

> "Grant the necessity for concurrent jurisdiction
> in the field of procedure, immediately another
> problem presents itself. Should there not be
> some realm of judicial adiministration entirely
> free from legislative supervision? Or shall the
> legislature be permitted to dictate to the
> courts every detail of their internal regimen:
> command appellate courts to issue written
> opinions in every case, declare within what time
> cases shall be heard, deny to the court the
> power to issue its mandate until a prescribed
> period of time after judgment shall have
> elapsed? <u>There</u> <u>are</u> <u>spheres</u> <u>of</u> <u>activity</u> <u>so</u>
> <u>fundamental</u> <u>and</u> <u>so</u> <u>necessary</u> <u>to</u> <u>a</u> <u>court,</u> <u>so</u>

5

inherent in its very nature as a court, that to
divest it of its absolute command within these
spheres is to make meaningless the very phrase
judicial power." (Emphasis added.) 107 U. Pa.
L.Rev. at 29-30.

To the questions posed above the courts have answered with
virtual unanimity that the separation of powers doctrine does not
permit the legislature to intrude. For example, in Houston v.
Williams (1859), 13 Cal. 24, the court struck down a statute which
required that in all cases the California Supreme Court must render
a written opinion with reasons. The court said:

"If the Legislature can require the reasons for
our decisions to be stated in writing, it can
forbid their statement in writing, and enforce
their oral announcement, or prescribe the paper
upon which they shall be written, and the ink
which shall be used. And yet no sane man will
justify any absurd pretension, but where is the
limit to this power if its exercise in any
particular be admitted?" 13 Cal. at 25.

To the same effect, see Vaughan v. Harp (1887), 49 Ark. 160, 4 S.W.
75; Ocampo v. Cabangis (Pa. 1910), 15 Phil. 626.

In State ex rel. Kostas v. Johnson (Ind. 1946), 69 N.E.2d 592,
the court struck down a statute which forbade a lower court to hold
an issue under advisement for more than 60 days and which deprived
the court of jurisdiction if no decision was reached within 90 days.
In quoting from one of its previous cases, the court stated:

"'Courts are an integral part of the government,
and entirely independent, deriving their powers
directly from the Constitution, in so far as
such powers are not inherent in the very nature
of the judiciary. A court of general
jurisdiction, whether named in the Constitution
or established in pursuance of the provisions of
the Constitution, cannot be directed,
controlled, or impeded in its functions by any
of the other departments of the government. The
security of human rights and the safety of free
institutions require the absolute integrity and
freedom of action of courts.'" 69 N.E.2d at
595.

In speaking directly to the statute, the court further stated:

"[T]he court and not the Legislature must be the
judge of the order in which it will dispose of

6

cases and what period of time proper disposition shall require. There may be, and probably are, abuses and unjustified delays by courts in the disposition of cases, but the remedy is within the judicial branch of the government, not the legislative, or perhaps at the polls when a delinquent judge comes up for reelection." 69 N.E.2d at 596.

In striking down a statute which limited the time within which Ohio courts could hear or determine the case, the Ohio Supreme Court in Shario v. State (Ohio 1922), 138 N.E. 63, declared:

> "True, the general subject-matter of procedure by the parties to the cause, proscribing the manner of invoking the jurisdiction, the pleadings, and the time within which the jurisdiction shall be invoked, in short, the adjective law of the case, has always been regarded with the proper province of legislative action, yet <u>the legislative branch of the government is without constitutional authority to limit the judicial branch of the government in respect to when it shall hear or determine any cause of action within its lawful jurisdiction."</u> (Emphasis added.) 138 N.E. at 64.

And in 1978, an Ohio court struck down a statute which set time limits for the trial courts to hear testimony on a creditor's claim, and which further provided that the trial court lost jurisdiction if the testimony was not heard within that time. In holding that the statute was directory only and that the court did not lose jurisdiction by a failure to hear testimony within the statutory time limits, the court said:

> "'An act of the General Assembly, attempting to peremptorily prescribe the time within which any court in the exercise of its judicial function shall hear or determine a matter properly within its jurisdiction, is a legislative invasion of judicial power, and, as such, is unreasonable and unconstitutional and therefore null and void.'" In re McClintock (1978), 58 Ohio Misc. 5, 388 N.E. 762, 766-767.

In State v. Merialdo (Nev. 1954), 268 P.2d 922, the Nevada Supreme Court struck down a statute which required each district court judge, before receiving a monthly salary, to file an affidavit to the effect that the judge had no cases assigned for decision

7

which were older than 90 days. The court held that this statute violated a section of the Nevada Constitution which provided that a judge's salary could not be reduced during his term of office. 268 P.2d at 925. The court further held that the statute violated the separation of powers clause of the Nevada Constitution. 268 P.2d at 926.

And, of course, other decisions have struck down legislation imposing time limits for judicial action. In Waite v. Burgess (Nev. 1952), 245 P.2d 994, the Nevada Supreme Court struck down legislation which required judicial action within fixed time periods as being an unconstitutional interference with judicial functions. In Sands v. Albert Pike Motor Hotel (Ark. 1968), 434 S.W.2d 288, the Arkansas Supreme Court struck down a statute which required the circuit court (the trial court) to affirm a workmen's compensation decision after it has been on file for 60 days. In Resolute Ins. Co. v. Seventh Jud. Dist. Ct. of Okl. Co., Okl. (W.D. Okla. 1971), 336 F.Supp. 497, a federal judge struck down as an unconstitutional legislative interference with judicial functions, a requirement that a judge must hear a motion to set aside a bail bond forfeiture within 30 days of the motion.

The federal courts have struck down provisions of the Federal Speedy Trial Act on grounds that the requirements for trial within the statutory deadlines constitute an unconstitutional encroachment of the judiciary. The provisions were held to infringe on the constitutionally autonomous power of the judiciary--that is, to violate the separation of powers doctrine. See United States v. Brainer (D. Md. 1981), 515 F.Supp. 627; and United States v. Howard (D. Md. 1977), 440 F.Supp. 1106.

We make no attempt to catalog and discuss all the cases bearing on this issue. We emphasize also that defendant seems to concede that time limits within which judicial decisions must be made are

8

properly questions to be decided by the judiciary. However, defendant nonetheless puts forth two arguments to uphold the validity of the statutes.

He first argues that the statutes are constitutional because it is the judiciary which will always be making the final decision of how much time should be allowed to reach a decision or to write an opinion, and as to whether a violation has occurred. Defendant ignores, however, several mandatory aspects of the statutes, which we have already mentioned. Defendant further ignores the fact that any action to be taken by the judiciary--including the forfeiture of one month's pay if a violation is found--is mandated by the statutes. As the District Court stated: "[n]othing is clearer than that it is the legislature which is commanding the forfeiture."

Defendant next argues, without attempting to discuss the application of the separation of powers provision to these provisions, that two provisions of the Montana Constitution, when read together, can be construed to give the legislature the power to enact the statutes imposing time limits on judicial decision-making. He relies on Art. VIII, § 12, which provides that:"[t]he legislature shall by law insure strict accountability of all revenue received and money spent by the state and counties, cities, towns, and all other local governmental entities." (Emphasis added.) He further relies on Art. VII, § 11, which, as it pertains here, requires the legislature to establish a five member judicial standards commission. It provides: "[t]he legislature shall create a judicial standards commission consisting of five persons and provide for the appointment thereto of two district judges, one attorney, and two citizens who are neither judges nor attorneys."

The last clause of the separation of powers provision, Art. III, § 1, declares that one branch shall not exercise a power belonging to another branch ". . . except as in this constitution

9

expressly directed or permitted." Even by the most liberal construction standards we cannot read either Art. VIII, § 12, above, or Art. VII, § 11, above, to mean that the drafters of these provisions intended that time limits on judicial decision-making would be imposed. In fact, defendant's interpretation cannot be reasonably implied.

Perhaps the trial court best described the effect of sections 3-2-104 and 3-5-212, MCA, in comparing them with an attempt by the judiciary to interfere with the internal operations of the legislature:

> "The totality of the effect of Chapter 375 is to interfere with the internal operations of the judiciary in the same manner as if the judiciary would impose limitations on the legislature as to its internal operations, such as the number of committees, the time within which a committee must act, the time each legislator must attend the sessions, limiting the time of discussion, limiting the time one bill must pass from one house to the other and the like. All of these legislative functions are internal with the legislature and the constitution authorizing the legislature to govern its affairs without interference from the other constitutional branches of government."

## PART II. DIMINUTION OF SALARY AND IMPAIRMENT OF CONTRACT

Although our decision on the separation of powers issue is dispositive, we nonetheless proceed to the two additional grounds on which the trial court held the statutes to be unconstitutional—diminution of salary and impairment of salary. The salary forfeiture provisions clearly violate these constitutional provisions.

The penalty provisions of both statutes require a one month's forfeiture of pay in the event of a violation. Section 3-2-104, MCA, which applies to supreme court justices, provides in part that the supreme court ". . . shall order that the state auditor not issue a warrant for payment of services for 1 month, which pay is forfeited by the justice." Section 3-5-212, which applies to

10

district judges, provides in part that the supreme court ". . . shall order that the state auditor not issue a warrant for payment of services for 1 month, which pay is forfeited by the judge." The trial court held that these statutes constitute both an unconstitutional diminution of salary and an unconstitutional impairment of contract.

The state constitutional prohibition against diminution of judicial salaries during terms of office provides that "[a]ll justices and judges shall be paid as provided by law, but salaries shall not be diminished during terms of office." Art. VII, § 7(1). The federal constitutional prohibition against impairment of contracts, Art. I, § 10, provides in part: "no state shall . . . pass any . . . law impairing the obligation of contracts . . ." The state constitutional prohibition against impairment of contracts, Art. III, § 31, provides: "[n]o . . . law impairing the obligation of contracts . . . shall be passed by the legislature.

In arguing that the prohibition against reduction of judicial salaries is not violated, defendant in effect argues that the legislature can do indirectly what it is prohibited from doing directly. Defendant concedes that the statute mandates a reduction in salary but argues that if the judiciary imposes the sanctions rather than the legislature, the constitution is not violated. This argument, of course, ignores the fact that the judicially-imposed reductions are mandated by the statutes.

And assuming that the legislature can indirectly violate the constitution by imposing the duties on the supreme court to forfeit the salaries of judges who do not comply with the challenged statutes, the defendant next argues that the contract impairment clauses of the United States and Montana Constitutions are not violated because the legislature has reserved to itself the authority to condition payment of salaries on performance of all

11

services required. As applied here, defendant claims that the legislature can withhold judicial salaries if a judge does not reach a decision within the time limits set by the challenged statutes.

A constitutional provision prohibiting diminution of salaries during the term of office is designed to remove from lawmakers the temptation to exert control over the other branches by promise of reward in the form of increased compensation or threats of punishment by way of reduced salaries. State ex rel. Jackson v. Porter (1920), 57 Mont. 343, 188 P. 375. In Jackson, we so interpreted the 1889 provision which applied to all elected public officers. The 1889 Constitution also contained a provision applying only to judges. Art. VIII, § 29, expressly prohibited the salaries of judges from being increased or decreased. The provision with respect to all public officials was not carried over to our 1972 Constitution; however, a similar provision applying to judges was, of course, placed in the 1972 Constitution. Art. VII, § 7 of our present Constitution, although now applying only to judicial compensation, still embodies the fundamental policy considerations set forth in Jackson. See also Merialdo, supra, 268 P.2d at 925, where the Nevada Supreme Court so interpreted the judicial article of the Nevada Constitution which prohibits judicial salary reductions during a term of office. This was one ground on which the Nevada court struck down statutes setting deadlines for judicial opinions and requiring affidavits of compliance as a condition of getting paid.

We will not, as the defendant urges, sanction an indirect violation of the Constitution by upholding a scheme for reduction of salaries mandated by the legislature but administered by the courts. We must, therefore, conclude that the challenged statutes violate Art. VII, § 7 of our Constitution forbidding a reduction of judicial salaries during a term of office.

12

Assuming, however, that it is permissible to indirectly violate an express mandate of the Constitution, the statutes challenged here nonetheless cannot survive a challenge that they violate the impairment of contract clauses of our State and Federal Constitutions.

In Olson v. Cory (1980), 164 Cal.Rptr. 217, 609 P.2d 991, the California Supreme Court interpreted the impairment clauses as it affects the judiciary's right to salary set by statute. The court held that a judge entering office does so partly in consideration of the salary benefits then offered by the state for that office. The court held that if those salary benefits are reduced by the legislature during a judge's term of office or during the unexpired term of a predecessor judge, the judge is nonetheless entitled to the contract for benefits during the remainder of the term. In applying the impairment clause the court stated:

"Public employment gives rise to certain obligations which are protected by the contract clause of the Constitution. [Citations omitted.] Promised compensation is one such protected right. [Citations omitted.] Once vested, the right to compensation cannot be eliminated without unconstitutionally impairing the contract obligation. [Citations omitted.] When agreement of employment between the state and public employees have been adopted by governing bodies, such agreements are binding and constitutionally protected."
609 P.2d at 994.

Although defendant concedes the constitutional protection accorded judicial salaries through the impairment clauses, the argument nonetheless is made that no impairment exists if there is a statutory basis for the legislature to condition payment of salary on performance of all services required. Applied here, defendant argues that the legislature can properly condition payment of judicial salaries based on timely filing of affidavits and timely filing of judicial decisions. Defendant argues that ". . . such failure on the part of a justice or judge constitutes a non-performance of required services justifying the withholding of

13

the warrant. Clearly, a justice or judge has no contractual right to expect payment of service he has not rendered."

In searching for a statutory basis for the legislature to condition payment, defendant cites but does not quote section 2-16-406, MCA, a statute having absolutely no application to this case. This statute, in a most general way, specifies which services rendered by all elected state officials must be considered as falling within the duties for which they are paid their annual salaries. Neither withholding of nor forfeiture of judicial salaries is contemplated by this statute.

Section 2-16-406, has been in existence since 1895, although it has been amended several times over the years. It is part of that chapter dealing with salaries of the following elected state officials: the governor, lieutenant governor, chief justice and justices [it does not cover salaries of district court judges], attorney general, state auditor [the defendant here], superintendant of public instruction, public service commissioners, secretary of state, and clerk of the supreme court. The preceding statute (section 2-16-405, MCA) establishes the annual salaries for the elected state officials mentioned here. Section 2-16-406 specifies, in a most general way, the duties that must be performed for the salary received. It provides:

"(1) The salary of each such officer shall be for all services required of him or which may hereafter devolve upon him by law, including all services rendered ex officio as a member of any board, commission, or committee, but shall not include actual necessary travel, lodging, and subsistence expenses incidental to his official duties.

"(2) Unless otherwise provided by law, the salaries of officers must be paid out of the general fund in the state treasury monthly on the last day of the month."

Defendant's interpretation of this statute renders it subject to the same constitutional objections made concerning the challenged statutes here. We need not belabor the point, however, because this

14

interpretation is so clearly in error. In effect, defendant argues that the legislature can withhold or forfeit the salaries of all state officials covered by the statute. Suffice to say that this interpretation will undoubtedly come as a great shock to those state officials who claim a right to their salaries without a requirement that they file affidavits or perform their duties within a specified time.

We have held that the challenged statutes violate Art. VII, § 7(1), which empowers the legislature to set judicial salaries subject to the restriction that such salaries cannot be reduced during a term of office. The legislature cannot directly establish an annual salary by one statute and then indirectly take away any part of that salary by a statute that imposes a forfeiture because an affidavit has not been filed or a decision has not been filed within the time limits set by the challenged statutes. These forfeiture provisions just as clearly violate the impairment of contract clauses of the State and Federal Constitutions.

PART III. THE APPLICATION OF ARTICLE VII, § 2(3)

In light of our holdings in Parts I and II declaring the challenged statutes to be unconstitutional, we think it important to discuss the role of the courts and the legislature as they relate to rule-making for the courts. The roles are specified in Art. VII, § 2(3), which provides:

> "It [the supreme court] may make rules governing appellate procedure, practice and procedure for all other courts, admission to the bar and conduct of its members. Rules of procedure shall be subject to disapproval by the legislature in either of the two sessions following promulgation."

The 1889 Constitution did not contain such a provision. The judicial article was silent on the role of the supreme court in making appellate rules of practice or civil rules of practice. It was simply assumed that the legislature had unrestricted authority

15

to legislate in this area. In fact, before the 1972 Constitution, any authority of the supreme court in adopting either appellate rules of procedure or civil rules of procedure, came expressly from the legislature, with the legislature reserving the right to repeal any rules promulgated pursuant to this legislative authorization. See sections 3-2-701 through 3-2-708, MCA, enacted in 1963. Clearly, with the adoption of the 1972 Constitution, sections 3-2-701 through 3-2-708, were impliedly repealed, for Art. VII, § 2(3) vests the rule-making authority in the supreme court subject only to legislative veto. This provision changed the roles of the supreme court and the legislature.

We have had only one occasion to interpret this clause in an opinion. In Matter of McCabe (1975), 168 Mont. 334, 544 P.2d 825, the issue was whether the legislature or this Court could set the standards for admission to the bar. In interpreting Art. VII, § 2(3), we held that this Court has the exclusive control over admission to the bar and conduct of members of the bar. Concerning the remaining portion of (3) we stated:

> "The second sentence of subdivision (3) obviously means, without the necessity for any strained construction, that as to rules of appellate procedure and rules of procedure for other courts, such as the Montana Rules of Civil Procedure, the promulgation of such rules is subject to disapproval by the legislature." 168 Mont. at 339, 544 P.2d at 828.

Without question, Art. VII, § 2(3) vests in the supreme court the authority to adopt rules for appellate procedure and trial and appellate procedures "for all other courts." Just as clearly, the legislature is empowered to veto any such rules promulgated by this Court. However, once a legislative veto is exercised, the legislature is not empowered to fill the vacuum by enacting its own legislation governing appellate procedure or lower court procedure.

We have held in Part I of this opinion that the challenged statutes constitute a direct infringement on the functional and

16

constitutional integrity of the judiciary as a separate branch of government, and therefore that the statutes violate the separation of powers clause (Art. III, § 1) of our State Constitution. The constitutional provision giving rule-making power to the supreme court and veto power to the legislature, does not encompass the kind of legislation embodied in the challenged statutes. We held that time limits within which judicial decisions must be reached, fall within what we recognized as the ". . . third realm of judicial activity, neither substantive nor adjective [procedural] law, a realm of 'proceedings which are so vital to the effective functioning of the courts as to go beyond legislative power.'" 107 U. Pa. L.Rev. at 31-32. The internal operations of the courts, this third realm of judicial proceedings, are not subject to legislative veto:

> "A constitutional [provision such as Art. VII, § 2(3)] which expressly reserves ultimate authority over procedure to the legislature need not be feared as sanctioning legislative invasion of this last judicial stronghold.. . . So long as a constitution maintains the fundamental separation of powers [Art. III, § 16, 1972 Mont. Const.] this area of functional independence of the judiciary will be preserved in the very grant of judicial power." 107 U. Pa. L.Rev. at 33.

If we held, however, that the separation of powers doctrine was not violated, we would then be required to examine the statutes in light of Art. VII, § 2(3), which gives only the veto power to the legislature. The question would be whether the legislature, in the face of Art. VII, § 2(3), could validly enact statutes setting time limits (with sanctions other than a forfeiture or loss of judicial salary) for the judiciary to reach its decisions. Again, we would be required to strike down the legislation as having gone beyond the authority conferred on the legislature as provided for in this constitutional provision.

The trial court aptly described the situation that would exist if the statutes were considered to be procedural rules and therefore

17

necessarily subject to the requirements and restrictions of Art. VII, § 2(3):

> "Chapter 375 [sections 3-2-104 and 3-5-212] is a statute which attempts to govern the internal conduct of judicial business. Like the rules governing conduct of members of the bar, it is not a procedural rule within the meaning of the Montana Constitution, Article VII, Section 2(3). Even if the Supreme Court adopted the language of Chapter 375 as as procedural rule, the legislature has only the power, under Article VII, of the Montana Constitution to disapprove."

It is therefore clear that if in Parts I and II of this opinion we did not find the constitutional violations complained of, we would nonetheless be required to hold that the legislature exceeded its constitutional power under Art. VII, § 2(3) in enacting the legislation.

For all of these reasons we hold the challenged statutes to be unconstitutional. The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

18

**3-2-104. Salaries — expenses.** (1) The salaries of justices of the supreme court are provided for in 2-16-405.

(2) If any cause, motion, or other proceeding remains pending and undecided for a period of 90 days after submission for decision, the justice of the supreme court who has been assigned to write the opinion, order, or decision of the court shall submit an affidavit on or before the 90th day to the chief justice setting forth the case name, cause number, and the reason the matter has not been decided. Copies of the affidavit must be furnished to all parties to the matter pending. A cause, motion, or other proceeding is considered submitted for decision when all hearings have been held and final briefs have been submitted by all parties to the matter pending. Upon the filing of the affidavit, the justice shall have an additional 30 days to decide the matter which has been submitted. No cause, motion, or other proceeding may remain undecided for more than 120 days after submission for decision without the approval of a majority of the other members of the supreme court for good cause shown in an affidavit requesting additional time. If a justice of the supreme court violates the provisions of this section, any party to a matter pending in violation of this section or, by a majority vote, the other members of the supreme court may refer the matter to the judicial standards commission. If the court, acting upon the recommendation of the commission, determines the justice is not in compliance with this section, it shall order that the state auditor not issue a warrant for payment of services for 1 month, which pay is forfeited by the justice.

(3) Actual and necessary travel expenses of the justices of the supreme court shall be the travel expenses, as defined and provided in 2-18-501 through 2-18-503, incurred in the performance of their official duties.

**3-5-212. Submission of affidavit — payment of salary — commission to determine compliance.** (1) If any cause, motion, or other proceeding remains pending and undecided for a period of 90 days after submission for decision, the district court judge before whom the matter is pending shall submit an affidavit on or before the 90th day to the chief justice of the supreme court setting forth the case name, cause number, and the reason the matter has not been decided. Copies of the affidavit must be furnished to all parties to the matter pending. A cause, motion, or other proceeding is considered submitted for decision when all hearings have been held and final briefs have been submitted by all parties to the matter pending. Upon the filing of the affidavit, the district judge shall have an additional 30 days to decide the matter which has been submitted. No cause, motion, or other proceeding may remain undecided for more than 120 days after submission for decision without the approval of a majority of the supreme court for good cause shown in an affidavit requesting additional time.

(2) If a district judge violates the provisions of this section, any party to a matter pending in violation of this section or, by a majority vote, the supreme court may refer the matter to the judicial standards commission.

(3) If the supreme court, acting upon the recommendation of the commission, determines that the judge is not in compliance with this section, it shall order that the state auditor not issue a warrant for payment of services for 1 month, which pay is forfeited by the judge.