No. 97-659

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 148

IN THE MATTER OF J.A., a Youth,

DEPARTMENT OF CORRECTIONS,

Appellant,

v.

LAKE COUNTY,

Respondent.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Diana P. Leibinger-Koch (argued), David L. Ohler, Special Assistant

Attorneys General, Department of Corrections, Helena, Montana

For Respondent:

Deborah Kim Christopher (argued), Lake County Attorney, Polson,

Montana

Argued: September 17, 1998

Submitted: October 20, 1998

Decided: June 29, 1999

Filed:

No

_____

Clerk


Justice W. William Leaphart delivered the Opinion of the Court.


**¶1. Appellant, Department of Corrections (hereafter, DOC) appeals from the order of the Twentieth Judicial District Court.**

**¶2. We reverse in part and affirm in part.**

**¶3. The following issues are presented on appeal:**

**¶4. 1. Whether the District Court erred in concluding that § 52-5-109, MCA, is unconstitutional.**

**¶5. 2. Whether DOC's request that Lake County comply with § 52-5-109, MCA, was an unfunded mandate in violation of § 1-2-116, MCA.**

### Standard of Review

**¶6. We review a district court's conclusions of law to determine whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.**

### Factual and Procedural Background

**¶7. In June, 1997 the District Youth Court found that J.A. was a delinquent youth. Upon the recommendation of DOC's youth placement committee, the District Court committed J.A. to DOC for placement at the San Marcos Treatment Center in Texas. The District Court also ordered that DOC pay the cost of transporting J.A. The District Court subsequently filed an order directing that DOC designate a place for it**

to receive custody of J.A. When DOC refused to pay J.A.'s transportation costs, Lake County paid the cost of transporting J.A. to Texas, rather than have J.A. remain in detention while the issue of who should pay his costs was determined.

¶8. In July, 1997 the District Court issued a citation and order to DOC to show cause why it should not be ordered to pay the transportation costs for J.A. In August, 1997 the District Court held a hearing and, in September, 1997 the District Court entered its findings of fact, conclusions of law, and order.

¶9. The District Court determined that the portion of § 52-5-109, MCA, directing the District Court to arrange for the transportation of a youth committed to DOC is unconstitutional. The District Court concluded:

The placement power is administrative power placed with the executive branch as determined by the Legislature through statute. Having given that power to the Department of Corrections, the legislative branch can not require the judicial branch to perform executive actions in support of the administrative. This is clearly a blurring of the separation of powers. . . . This statute completely reverses the roles of the executive and judicial branches in conflict with Article III, Section 1 of the Montana State Constitution.

The District Court further concluded that a "plain reading of [§ 52-5-109, MCA] would dictate that a place designated to receive custody was intended to refer to a location within [Montana]." The District Court determined that in attempting to shift to Lake County the cost of transporting J.A. to Texas, DOC violated § 1-2-116(2)(a), MCA. The District Court ordered that DOC reimburse Lake County for the money it expended in transporting J.A. to Texas. DOC appeals from the order of the District Court.

Discussion

¶10. 1. Whether the District Court erred in concluding that § 52-5-109, MCA, is unconstitutional.

¶11. Section 52-5-109, MCA, provides:

**Commitment expenses--arrangement for transportation**. The expenses of committing

a youth to the Pine Hills youth correctional facility or the department of corrections and transporting the youth to the Pine Hills youth correctional facility or the place designated by the department for it to receive custody, as well as the expense of returning the youth to the county of residence, must be borne by the county of residence. The district judge shall arrange for transportation of the youth to the place where the department has directed that it will receive custody of the youth.

Section 52-5-109, MCA. Article III, Section 1, provides:

**Section 1. Separation of powers**. The power of the government of this state is divided into three distinct branches--legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Article III, Section 1, Mont. Const.

**¶12. DOC argues that the District Court erred in concluding that § 52-5-109, MCA, is unconstitutional. Relying on this Court's decision in Coate v. Omholt (1983), 203 Mont. 488, 662 P.2d 591, DOC contends that § 52-5-109, MCA, does not interfere with the internal operations of a district court. Rather, DOC argues that arranging the transportation of youths is an administrative task performed by probation officers whom the District Court appoints. Relying on Clark v. Dussault (1994), 265 Mont. 479, 878 P.2d 239, DOC argues that "separation of powers only means 'that the powers properly belonging to one department shall not be exercised by either of the others.' " DOC contends that § 52-5-109, MCA's requirement that district courts arrange transportation for committed youths neither takes power from the judiciary nor gives the judiciary power.**

**¶13. Lake County responds that § 52-5-109, MCA, is unconstitutional. Lake County asserts that the legislature has given all responsibility for placement to DOC; thus, "[h]aving given that power to the Department, the legislative branch can not require**

the judicial branch to perform executive actions in support of the executive." Lake County argues that § 52-5-109, MCA, creates in essence a reversal of roles, with the judiciary performing administrative functions and acting "as the Department's bus driver on the placement they develop."

¶14. A statute is presumed constitutional. City of Billings v. Laedeke (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349 (citation omitted). Further, a party challenging the constitutionality of a statute must show beyond a reasonable doubt that the statute is unconstitutional. Davis v. Union Pacific R. Co. (1997), 282 Mont. 233, 239, 937 P.2d 27, 30 (citation omitted). Courts have a duty to construe statutes "narrowly to avoid an unconstitutional interpretation if possible." State v. Nye (1997), 283 Mont. 505, 510, 943 P.2d 96, 99.

¶15. In previous decisions, this Court has recognized violations of the constitutional requirement of separation of powers in statutes that impair judicial authority and the integrity of judicial functions. In Harlen v. City of Helena (1984), 208 Mont. 45, 676 P.2d 191, this Court held that a city ordinance that provided for the licensing of attorneys "was invalid with respect to attorneys because it infringes upon this Court's constitutional authority to supervise and regulate attorneys and the practice of law." *Harlen*, 208 Mont. at 48, 676 P.2d at 193. The *Harlen* Court further concluded that "[a]ny attempt by another branch of government to interfere with this constitutional prerogative interferes with the doctrine of separation of powers." *Harlen*, 208 Mont. at 48, 676 P.2d at 193.

¶16. In Coate v. Omholt (1983), 203 Mont. 488, 662 P.2d 591, this Court struck two statutes that imposed sanctions on district judges and Supreme Court justices when judicial decisions were not reached within time limits fixed by statute. The Court in *Coate* concluded that these statues violated Montana's constitutional separation of powers requirement because their effect

is to interfere with the internal operations of the judiciary in the same manner as if the judiciary would impose limitations on the legislature as to its internal operations, such as the number of committees, the time within which a committee must act, the time each legislator must attend the sessions, limiting the time of discussion, limiting the time one bill must pass from one house to the other and the like.

*Coate*, 203 Mont. at 498, 662 P.2d at 596-97. The Court in *Coate* determined, however, that "by [the constitutional separation of powers provision,] we do not mean absolute independence because 'absolute independence' cannot exist in our form of government." *Coate*, 203 Mont. at 492, 662 P.2d at 594. The *Coate* Court concluded that separation of powers requires "that the powers properly belonging to one department shall not be exercised by either of the others." *Coate*, 203 Mont. at 492, 662 P.2d at 594 (citations omitted).

**¶17. Further, in State ex rel. Morales v. City Com'n, Etc. (1977), 174 Mont. 237, 570 P.2d 887, the Court struck a statute that allowed the termination of a police judge at the will of the city commission. The Court in *Morales* concluded that the statute was**

a clear violation of the mandate of the doctrine of separation of powers. The city commissioners, acting as the legislative branch of city government, may not infringe upon the duties of the judicial branch. The power to remove the police judge following a ruling adverse to the city commission is an impermissible infringement upon the duty of each and every judge to render a fair and impartial decision.

*Morales*, 174 Mont. at 241, 570 P.2d at 889.

**¶18. In the present case, we hold that the District Court erred in concluding that § 52-5-109, MCA, is unconstitutional. Section 52-5-109, MCA's requirement that a district court "arrange the transportation" of youth does not encroach upon judicial authority, require the judiciary to exercise executive power, or interfere with internal judicial operations. Contrary to the District Court's conclusion, there is no "complete reversal" of executive and judicial roles under § 52-5-109, MCA. A district court may sentence a delinquent youth to the custody of DOC pursuant to § 41-5-1513, MCA; DOC then places a committed youth pursuant to §§ 41-5-1522, MCA, et seq. Within this statutory scheme, the arrangement of transportation is an administrative detail. *Compare* Application of Peterson (1989), 235 Mont. 313, 316, 767 P.2d 319, 321 (concluding "[t]he power of the Youth Court is not diminished through granting the Department placement power[;] . . . [t]he court has the exclusive power to sentence the youth").**

**¶19. 2. Whether DOC's request that Lake County comply with § 52-5-109, MCA, was**

an unfunded mandate in violation of § 1-2-116, MCA.

¶20. Section 1-2-116, MCA, provides in pertinent part:

**State agencies not to shift cost to local governments**. (1) A state agency may not take any action prohibited by subsection (2) without authorization in state law.

(2) A state agency may not demand, bill, request, or otherwise require a local government to take any of the following actions or make the provision of a service to a local government that is required by state law to be provided to that government contingent on the local government taking any of the following actions:

(a) pay for all or part of the administrative costs of a program, activity, or undertaking required by state law to be carried out primarily by a state agency.

Section 1-2-116, MCA.

¶21. DOC argues that the District Court erred in concluding that § 52-5-109, MCA's requirement that counties pay for the transportation of youth is an unfunded mandate that violates § 1-2-116, MCA. DOC argues that § 1-2-116(1), MCA, which provides that "[a] state agency may not take action prohibited by subsection (2) without authorization in state law," has not been violated because § 52-5-109, MCA, specifically requires that Lake County pay for the transportation of youth. Thus, DOC is authorized under § 52-5-109, MCA, to require that Lake County pay for the transportation of J.A. DOC also argues that § 52-5-109, MCA's requirement that counties pay transportation costs is not an unfunded mandate because § 7-6-2511, MCA, allows counties to levy taxes to pay district court expenses. Further, DOC argues that § 41-5-104, MCA, requires that counties "provide the necessary funds [and] make all needful appropriations to carry out the provisions of [the Youth Court Act]." Section 41-5-104(1), MCA. DOC argues that funds for transportation are necessary to carry out the provisions of the Youth Court Act.

¶22. DOC contends that the District Court further erred in concluding that § 52-5-109, MCA, requires that counties pay for the transportation costs of youths only within the state of Montana. DOC argues that had the legislature intended that counties pay only for transportation within Montana, the legislature could have

inserted such language in § 52-5-109, MCA. In the absence of such language, DOC argues that there are no restrictions on the places that it may designate "to receive custody." Section 52-5-109, MCA.

¶23. Lake County responds that § 52-5-109, MCA's requirement that counties pay for the out-of-state transportation of committed youths passes fiscal responsibility to counties as an unfunded mandate. Lake County argues further that in light of § 52-5-109, MCA's mention of two instate placement facilities, a reasonable reading of § 52-5-109, MCA, is that the legislature only intended that counties pay for instate transportation of youth.

¶24. We conclude that the plain meaning of § 52-5-109, MCA, is that counties pay for the transportation of committed youth only within the state of Montana. DOC is itself a Montana agency. In the context of § 52-5-109, MCA, it is only logical to assume that the legislature contemplated that a Montana agency would "receive custody" of the youth in the state of Montana, not Texas or Maine. Further, § 52-5-101, MCA, provides:

**Establishment of state youth correctional facilities--prohibitions**.

(1) The department of corrections, within the annual or biennial budgetary appropriation, may establish, maintain, and operate facilities to properly provide custody, assessment, care, supervision, treatment, education. . . . The facilities include but are not limited to the Pine Hills youth correctional facility in Miles City.

Section 52-5-101, MCA, makes no mention of out-of-state facilities. Moreover, § 52-5-109, MCA, also makes no mention of out-of-state facilities. The plain language of § 52-5-109, MCA, does not support DOC's expansive interpretation of this statute, and we decline to insert what has been omitted. *See* § 1-2-101, MCA (providing "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted"). We hold that under § 52-5-109, MCA, a county is only required to pay the transportation costs of a committed youth within the state of Montana.

¶25. Because this holding is dispositive, we do not address whether § 52-5-109, MCA, is an unfunded mandate under § 1-2-116, MCA. The order of the District Court

**requiring that DOC reimburse Lake County for its costs incurred transporting J.A. to the San Marcos facility in Texas is affirmed.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.